Rea v. Smith.

New trial denied.

REA *vs.* SMITH.

A vendor of personal property is not a competent witness to prove the sale fraudulent, in a contest respecting the same, between his creditors and the vendee.

The release of the vendor, by the officer sued for the taking of the property, does not render the vendor a competent witness.

THIS was an action of trover, tried at the Columbia circuit in September, 1835, before the Hon. JAMES VANDERPOEL, then one of the circuit judges.

The suit was brought for the taking of horses and other chattels claimed by the plaintiff to have been purchased by him of one Peter Merrifield. The defendant justified the taking *as a constable* by virtue of two executions against Merrifield, alleging the sale to the plaintiff to have been fraudulent. To prove the fraud, the defendant called Merrifield as a witness, and executed to him a *release*, "from (as stated in the bill of exceptions) all claims and demands which he might have against him for or on account of the determination of the suit." The plaintiff objected to Merrifield's competency as a witness notwithstanding the release, but the objection was overruled, and he was sworn and proved the sale to the plaintiff to be wholly fraudulent. The jury found a verdict for the *defendant*. The plaintiff having excepted to the decision of the judge, moved for a new trial.

*M. T. Reynolds*, for the plaintiff.

*K. Miller*, for the defendant.

NEW-YORK,    *By the Court*, NELSON, Ch. J.   The only question worthy
May, 1838.   of notice in this case, is whether Merrifield, after the release
             from the defendant, was a competent witness.

Rea
v.
Smith.

The action was trover against the defendant, a constable,
for taking the property on executions against the *witness ;*
the plaintiff claiming it by virtue of a previous purchase
from him, but which the defendant alleged was fraudulent.
Merrifield was called to prove the fraud.   Aside from the
question of fraud, he would seem to have been indifferent, for
then, in any event of the cause, he stood responsible to the
losing party, either to the purchaser or judgment creditor as
the case might be.   It was supposed that *Bland* v. *Ansley et
al.*, 2 New R. 330, is an authority against this view ; but on
looking at that case it will be found that the point there was
whether the property had in fact been sold to the plaintiff by
the witness, and hence there was no liability over to the
plaintiff admitted, if the verdict resulted for the defendant.
The interest therefore was exclusively on one side.   2 Starkie,
751, Phil. ed. (n. c.)   In *Davis* v. *Dinwoody*, 4 T. R. 678, a
new trial was granted, not on the ground of the interest, but
upon the principle that forbids husbands and wives from being
witnesses for or against each other.   The case, as stated by
Mr. Starkie, 2 vol. 401, is calculated to mislead the reader.
A note on the same page, however, sufficiently explains the
text.

But assuming to be true what the witness was offered to
prove, and did most effectually prove, namely, a fraudulent
sale by him of the property in question to the plaintiff;
could the latter now recover back the price paid, since a
verdict for the defendant has, in effect, taken the property
out of his hands ?   In other words, did the *witness* stand
indifferent in consequence of being legally liable over to the
plaintiff, in case he failed in the suit?   If not thus liable;
then his interest was exclusively in favor of the party calling
him.   It is true, the witness by the sale impliedly warranted
the title.   6 Johns. R. 5.   But such warranty did not
extend to the operation, and effect of the *fraud* in the
sale to which the vendee was a party ; he must be con-
sidered as having assumed that hazard upon himself, as

much so as if it had been made an exception in an express

warranty of the title. Besides it would be against all principle, and an encouragement to fraudulent purchasers, to yield to them an indemnity against losses arising from their own wrong, the *joint illegal act* of themselves and the vendors. How then could the plaintiff recover against this witness the value of the property, even assuming the law has applied it to the payment of his debts? I confess I know of no principle upon which the action could be maintained. The execution and sale would not show the taking from the plaintiff, *by a title paramount*, but by one subsequent; he must therefore go into the particular circumstances of the transaction, and they would develope a case in which it would appear, 1. That the implied warranty did not extend to it as before shown; and 2. That in respect to the fraud upon which the title of the plaintiff failed, he was *in pari delicto.* 2 Doug. 450. I concede the vendor cannot defeat his own sale, on the ground that it was void as to creditors, because the statute made it void only as against them. Cro. Jac. 270. Cowper, 434, 2 T. R. 46, 13 Eliz. c. 5, 27 id. c. 4, 2 R. S. 137, § 1, and left it valid as between him and the vendee. But there the plaintiff would be obliged to affirm the fraud itself, in order to sustain the action; to permit which, would be against fundamental principles. *Ex turpi causa non oritur actio.* Cro. Jac. 270. Doug. 450. 1 W. Black. R. 363. 2 Barn. & Ald. 367. Saund. Pl. & Ev. 527. 1 Stark. R. 60.

Did the release from the defendant operate to discharge the witness from his liability on the executions, so as to make him indifferent? Had it come from the party in interest, no doubt it would have had that effect. The constable, however, could not release the judgment or debt. The witness might still be called on to pay; the judgment would or might be revived, in case of a recovery of the property taken, upon the ground that it did not belong to the defendant in the execution, and still remain an existing and operative demand.

New trial granted, costs to abide event.