Nichols *v.* Patten.

the share of *John* may have become indefeasable, upon the same principle,

*Judgment on the verdict.*

## Nicholas Nichols *vs.* William Patten *& al.*

If the chattels described in a bill of sale were, at the time it was made, upon the land or within the buildings of the vendee, and the vendor had no longer possession or control of the land or buildings, and they were within the exclusive control of the vendee or his agent, the sale is complete, and no formal delivery is necessary.

A conveyance of chattels fraudulent and void as to creditors of the vendor, is still binding upon the parties to it; they cannot set up the fraud upon creditors, as against each other; the doctrine, *in pari delicto*, does not there apply; and the vendee, losing his title to the property by the acts of the vendor, may recover its value against him.

The vendor therefore, where the conveyance is alleged to be fraudulent, may be a witness, as well to defeat as to sustain the conveyance, his interest being a balanced one in either case.

To constitute an attachment, it is not necessary that the officer should handle the goods attached, but he must be in view of them, with the power of controlling them and of taking them into his possession. And in case of an attempt by another to interfere or take possession, he should take such measures as to prevent it, unless resisted.

The return of an officer, where he is a party, is *prima facie* evidence, and only so, of an attachment.

To preserve an attachment when made, the officer must by himself or his agent retain his control and power of taking immediate possession in all those cases in which the property is capable of being taken into actual possession, except in those where our statute prescribes a different rule. And if he does not do this, the attachment will be regarded as abandoned and dissolved.

The mere request to a person to give notice, would not be sufficient, unless he consented to assume the trust of taking charge of the goods for the officer.

An attachment does not deprive the debtor of the right to convey his property subject to it, and any merely formal act of delivery, which does not resist or deprive the officer of the actual control of it, is no violation of his rights, and will not subject the purchaser to an action.

Nor would the continued operations of mechanics upon the property attached, if not objected to by the officer or his keeper, be considered a trespass against him. But any act whatever which deprives the officer or his keeper of the control of the property, or the removal of any portion of it from the place where he chooses to have it deposited, would subject the person committing the act to an action.

Fraud is not to be presumed; and the burthen of proof to establish it, is upon the party asserting it.

TRESPASS for a quantity of saw-mill gearing, hoops, &c. The plaintiff claimed the property under an alleged attachment thereof as the property of one *Rogers, Jan.* 16, 1837. The defendants claimed under a bill of sale, dated on *Jan.* 14, 1837. *Erastus C. Wheeler* was called by the plaintiff, and testified, that on the morning of *January* 16, 1837, he went to the mill-yard of the defendants in *Phipsburg,* over which and in the workshops and sheds, the property in controversy, being gearing for several saw-mills, some of it partly finished, was scattered, and met the plaintiff, coming from the yard, but then upon it, who told him he had attached the property *there,* turning round towards it, and asked him, if he was going to stay about there. Witness told him he was a " spell," and the plaintiff then asked him to forbid any one taking the things away ; that he did not promise so to do ; that he was not appointed keeper of the property, and neither receipted for it, or promised to keep it ; that no writs were exhibited to him, and no schedule was furnished and no specification made by the plaintiff of what property he claimed to have attached, except in manner aforesaid ; that one *Baker* worked after that time in the principal shop, and sometimes kept the key, and sometimes some of his, *Baker's* men, kept it ; that *Baker* and his men continued to occupy the shop and work upon the gearing, after *Jan.* 16, as before that time, for several days, and until he had completed his job, without any apparent change in the business, though he was not the exclusive occupant of it ; that the greater portion of the articles were light and moveable ; that he, the witness, continued to work in the yard and on the mills, boarding about one fourth of a mile from the yard, until *February* 4*th,* when he left *Phipsburg* for *Waterville,* and did not return until *March* 18 ; that about *Jan.* 18, one *Davis,* acting as the agent of the defendants came into the yard, and removed some of the articles and put them

under cover, not interfering with *Baker;* that while *Davis* was removing the articles, he, the witness, said to him, " I forbid the removal of these things;" that he probably advised how to remove some of the things; that the plaintiff did not interfere with the property ; that the witness did not have any compensation for keeping the property, and did not agree to take charge of it, unless as stated ; that when he saw the plaintiff on *Jan.* 16, at the yard, *Rogers* and *Davis* were there, and the plaintiff came from them ; that he could not state that either the plaintiff or the witness ever notified *Davis,* the agent of the defendants, of any attachment ; and that in *July* following, the plaintiff called on · him to make a schedule and estimate of the property in the yard, shops, &c., at the time of the alleged attachment, and that he did so.

The other facts in the case sufficiently appear in the opinion of the Court.

After the plaintiff had introduced his testimony in relation to the attachment, the defendants requested EMERY J. presiding at the trial, to rule as matter of law that the evidence, if believed, did not show an attachment of the property claimed, and a preservation of the attachment, such as would entitle the plaintiff to recover in this suit, and moved the court to direct a nonsuit. The Judge declined.

The counsel for the defendants objected, that it had not been legally proved, that the plaintiff was a deputy sheriff, duly qualified to act as such.

The Judge left it to the jury to determine, whether they might not fairly rest satisfied that he was a deputy, as he was found acting in that capacity, and is recited as such in the writ, and no call was made in the earlier stages of the testimony for any proof of that fact, and ruled, that these facts were *prima facie* evidence of his authority as a deputy. The Judge then instructed the jury, that as to what acts constituted an attachment of personal property, depended upon the kind of property and its situation, and a variety of other circumstances; that the general principle was, that the officer should have the general control of it by himself or a keeper ; and that if the keeper should go off and abandon it, such abandonment would dissolve the attachment ; that in this case it appeared, that the plaintiff was at the yard where the property was, at three o'clock on the morning, to make his attachment, and

that his return was *prima facie* evidence of the attachment ; that this was corroborated by the testimony of *Wheeler ;* and if the jury were satisfied, that the plaintiff did make an attachment at that time, and did put *Mr. Wheeler* in keeper, or to forbid the removal, the attachment would be sufficient for that time ; that some time should be allowed to take the property away.

The counsel for the defendants requested the Judge to instruct the jury and to rule as matter of law : —

1. That the evidence in the case, if believed by the jury, did not show an attachment of the property.

2. That if no account or schedule of the property, was made at the time, and no actual possession of it was taken by the plaintiff or by some one for him, there was no attachment.

3. That if there was an attachment on the morning of *Jan.* 16, yet if no special charge was taken of the property by the plaintiff or some one under him, and it was so left for several days, the attachment was lost.

4. That if after the attachment of property, moveable and easily moved, it was left for several days in the possession of the debtor or others, so that they continued to work upon it and finish it the same as before, the attachment was thereby lost.

5. That if there was no keeper of the property, the attachment of the moveable property would be lost, unless removed by the plaintiff as soon as it could be done in the exercise of reasonable diligence ; and that if the testimony in the case is to be believed, no keeper was appointed.

6. That whether the bill of sale is good or not by the contract, the agent, *Davis,* on his return in a week or several days after, finding the property in the same situation as he left it, without a keeper, had a right to take possession of it, as the attachment was relinquished and lost.

7. That if the property was liable to injury from exposure to the weather, or to be lost by plunder, and the plaintiff took no means to protect it, the attachment, if ever made, was abandoned.

8. That if *Wheeler* did notify *Davis,* that he was requested to forbid the removal of the property, that notice is not evidence of an attachment or a continuance of it.

9. That if any of the articles in question were unfinished at the

time of the alleged attachment, and were at that time being built by *Mr. Baker*, who continued to work on the same a long time afterwards without any objection from the plaintiff, and having completed the same, delivered them to the defendants or their agent, this action cannot be maintained for those articles.

10. That if the property was not demanded of *Davis* within thirty days after judgment, the attachment was lost.

The Judge declined to give the *first*, but submitted it to the jury under the general directions already given, whether there was an attachment and a preservation of it. As to the *second*, the jury were instructed, that a mere schedule would not be sufficient, but if there was actual possession, that would make the attachment good. The *third* was given. The *sixth* was given substantially. The *fourth*, *fifth*, *seventh*, *eighth* and *ninth* were not given ; the Judge deeming it unnecessary to give any more definite instructions, as to these points than had already been done. The *tenth* was given, with the addition, that the burden of proof was on the plaintiff. With regard to the defendants' title to the property, the Judge instructed the jury, that if they were satisfied of the advances made to *Rogers* beyond the amount they were required by the contract to have paid when the bill of sale was made, and that the contract had not become annulled, such advances constituted a good consideration for the bill of sale, and for which they had a right to take security ; that the possession taken by *Davis*, recognized by *Rogers*, if believed by the jury, was a sufficient delivery ; that if the bill of sale however was a mere contrivance to prevent the creditors of *Rogers* from attaching the property, and to delay and defraud his creditors, it would be wholly void ; and the burden of proof was on the defendants to prove, that the bill of sale was a fair transaction, and not for the purpose of delaying or defrauding creditors.

The verdict was for the plaintiff, and was to be set aside, if in the opinion of the Court any of the instructions given were erroneous in matters of law ; or if under the circumstances and facts proved in the case, instructions ought to have been given to the jury which were withheld ; or if the verdict was against law.

*J. W. Bradbury* and *Tallman*, for the defendants, argued in support of the grounds taken at the trial, and cited *Watson* v.

*Todd,* 5 *Mass. R.* 271 ; *Lane* v. *Jackson, ib.* 157 ; *Sanderson* v. *Edwards,* 16 *Pick.* 144 ; *Carrington* v. *Smith,* 8 *Pick.* 419 ; *Knapp* v. *Sprague,* 9 *Mass. R.* 258 ; *Train* v. *Wellington,* 12 *Mass. R.* 495.  1 *Stark. Ev.* 398.

*Mitchell* and *Groton,* for the plaintiff, contended, that there was no error in the refusal to give instructions, and that those given were correct ; and cited *Bruce* v. *Holden,* 21 *Pick.* 187.

The opinion of the Court was by

SHEPLEY J. — Both parties claim the property under *William R. Rogers;* the defendants as purchasers by a bill of sale executed on the 14th of *January,* 1837, and the plaintiff by an attachment made by him as a deputy sheriff on several writs on the 16th of the same month.  It appears from the testimony, that the property was on the land or within buildings belonging to the defendants, and that after the bill of sale *Rogers* no longer had possession. or control of the lands or buildings, but that they were within the exclusive control of the defendants or their agent.  The sale was therefore complete before the attachment, and the formal delivery or marking on subsequent days was unnecessary.  *Carrington* v. *Smith,* 8 *Pick.* 419.  Their title would be good if the sale was *bona fide* and for a valuable consideration.  This was denied and the plaintiff called *Rogers* as a witness, and he being objected to was permitted to testify, that the design in making the bill of sale was to prevent an attachment of the property by his creditors. *Rogers,* having on the 24th of *March* preceding entered into a contract to build a dam and mills for the defendants, had proceeded to accomplish the undertaking, and had received advances earlier and beyond the amount due, and made the bill of sale of the materials provided, as the defendants allege, to secure them for such advances.  The position of the witness was like that of a vendor of personal property, who having received his pay for it, testifies to a fraud between himself and the vendee, and thereby enables his own creditors to apply the property to the payment of his debts, thus securing to himself the benefit of it twice.  It is said, that his interest is still balanced because he thereby incurs a new liability to the vendee, who may recover of him on the contract of sale the value of the property.  In the case of *Bailey* v. *Foster,* 9

Nichols *v.* Patten.

*Pick.* 139, it was decided, that one thus situated would not be a competent witness for the purpose of proving the fraud. The decision appears to rest upon the position that the vendor having received payment, and testifying in such a manner as to enable his creditor to apply the property to the payment of his debts, obtains the value twice; without noticing that he would thereby incur a liability to refund to the vendee. In the case of *Rea* v. *Smith*, 19 *Wend.* 293, it is admitted, that such liability would arise, but it is denied that he would be a competent witness, because it is said the vendee could not recover against him on the contract of sale for two reasons ; 1. Because his title would not be destroyed by one paramount and so the case would not come within the warranty ; and 2d, Because to make out his case against the vendor he must necessarily prove a fraud in both the parties to the contract and thereby place himself *in pari delicto.* When a creditor recovers against the vendee, he does so because the law regards him as having the better title. And the vendee loses his title through the fault of the vendor in neglecting to pay his debt and thereby extinguishing the creditor's prior right to have the property applied in payment of it. It is not, clearly perceived why the creditor's should not be regarded as the paramount title; or why the vendor, who has caused the title of the vendee to be defeated, has not by that act violated his contract assuring the title to the vendee. If this be the true position of the parties, the first objection would prove insufficient to prevent a recovery. The second objection is to be examined. The statute of 13 *Eliz. ch.* 5, from which we derive our law respecting conveyances fraudulent as against creditors, provides, that only against creditors and others whose actions shall thereby be defrauded or delayed, they shall be of none effect; leaving them impliedly valid as respects the parties to them. The case of *Hawes* v. *Leader, Cro. Jac.* 270, *S. C. Yel.* 196, decided that the deed remained good against the parties, though void as to creditors. And this was recognized as a correct exposition of the statute in the case of *Osborne* v. *Moss,* 7 *Johns. R.* 161. In *Drinkwater* v. *Drinkwater, 4 Mass. R.* 357, *Parsons C. J.* says, " a conveyance to defraud creditors is good against the grantor and his heirs and is void only as to creditors. For neither the grantor nor his heirs claiming under him can avail them-

selves of any fraud to which the grantor was a party to defeat any conveyance made by him. The intention of the law in establishing this principle is effectually to prevent frauds by refusing to relieve any man or his heirs from the consequences of his own fraudulent act." In *Randall v. Phillips*, 3 *Mason*, 388, *Mr. Justice Story*, speaking of such a conveyance, says, " it is good as between the parties, and binds them and their privies. It may be avoided by any third persons, whose interests are intended to be defeated by it, but it is not absolutely void. The general doctrine is, that a conveyance in fraud of the law binds parties, and cannot be acted upon, so far as respects them as a nullity." According to these authorities the conveyance remaining good and . binding upon the parties to it, they cannot set up the fraud upon creditors against each other, and the doctrine *in pari delicto*, does not apply ; and the vendee losing his title by the acts of the vendor may recover against him. The vendor therefore may be a witness as well to defeat as to sustain the conveyance, his interest being a balanced one in either case.

To constitute an attachment, it is not necessary, that the officer should handle the goods attached, but he must be in view of them with the power of controlling them and of taking them into his possession. And in case of an attempt by another to interpose or take possession, he should take such measures as to prevent it, unless resisted.

The return of an officer where he is a party is *prima facie* evidence, and only so, of an attachment. *Bruce* v. *Holden*, 21 *Pick.* 187 ; *Sias* v. *Badger*, 6 *N. H. R.* 393.

To preserve an attachment when made, the officer must by himself or his agent retain his control and power of taking immediate possession in all those cases in which the property is capable of being taken into actual possession, unless our statute establishes, as it does in certain cases, a different rule. If he does not do this, the attachment will be regarded as abandoned and dissolved. *Sanderson* v. *Edwards*, 16 *Pick.* 144.

The application of these principles to the present case, as now presented by the testimony, would decide that the attachment might be sufficient, if followed by the continual presence of the officer or of some one on his behalf. There is no evidence of any contin-

ued control or of any attempt to retain it, unless *Wheeler* can be considered as undertaking to act for the officer. The mere request to *Wheeler* to give notice would not be sufficient unless he consented to assume the trust of taking charge of the goods for the officer. His acts and declarations taken together place him in a position so equivocal, that the jury should decide whether he did consent to act for the officer, and if so to what extent he did so act and continue the officer's control over the property. There can be no doubt, that he ceased to have any such connexion with it as would preserve the attachment after the 4th of *February* following. If the defendants had not interfered against the rights of the officer or his keeper before that day, the plaintiff cannot recover. And so far as they had before that time resisted and taken from his or his keeper's control any of the property, to such extent he may recover. It becomes therefore proper to examine their acts in relation to the property after the attachment. An attachment does not deprive the debtor of the right to convey his property subject to it, and any merely formal act of delivery, which does not resist or deprive the officer of the actual control of it, is no violation of his rights, and will not subject the purchaser to an action by the officer. It does not occasion any injury or deprive him of any right. *Bigelow* v. *Willson*, 1 *Pick.* 492. Nor would the continued operations of the mechanics upon the property, if not objected to by the officer or his keeper, be considered as a trespass against him. But any act whatever, which deprived the officer or his keeper of the control or removed any portion of the property from the place where he chose to have it deposited, would subject them to an action for such property.

The principle that fraud is not to be presumed and that the burthen of proof to establish it is upon the party alleging it, was recognized by the Court in the case of *Blaisdell* v. *Cowell*, 14 *Maine R.* 370.

It is not perceived, that the Court can properly come to any more definite conclusion upon the rights of the parties without the assistance of a jury, to which the matters of fact must again be submitted.

*Verdict set aside and a new trial granted.*