LEACH *vs.* KELSEY and others.

Where a debtor makes a fraudulent transfer of his whole property in order to defraud a judgment creditor, he can not, by a mere voluntary assignment of his property and effects to a trustee, for the benefit of all his creditors, prevent an assignee of the judgment creditor from bringing an action in the nature of a bill in equity against the debtor and the purchasers, to subject the property fraudulently transferred, or its proceeds, to the payment of the judgment.

The right to set aside the fraudulent sale will not pass, by such an assignment, and can not be asserted by the assignee.

The assignor would be estopped from asserting his own fraud, in a suit brought by the creditor against the fraudulent vendee; and the title of the assignee, being derivative merely, he takes no claim, by virtue of the assignment, which the assignor could not enforce.

Where a witness is objected to as incompetent, if the objection is on the ground of interest, that must be stated as the ground of objection, and the nature of the interest must be specified; so that the party may, if in his power, remove it.

Where an objection to the competency of a witness is not taken on the hearing before a referee, it will be considered as waived.

A more stringent rule does not prevail, under the code, in respect to the admissibility of parties as witnesses against their co-defendants, than existed under the former practice.

The credibility of a witness, on a hearing before a referee, is a question solely for the referee; and his decision can not be supervised.

THIS was an appeal, by the defendants Eaton and Spicer, from a judgment entered upon the report of a referee.   The action was brought by the plaintiff as assignee of a judgment creditor of the defendant Kelsey, against him and the other defendants Eaton and Spicer, alledging a sale by Kelsey to the other defendants, of his entire property, for the purpose of defrauding the judgment creditor.   The referee reported that he found the following facts:   First. That Lee, Judson & Lee were partners as merchants, in the city of New-York, and about the 17th day of November, 1847, sold to the defendant Kelsey a bill of goods, amounting to $398,01, on credit.   That on the 22d day of February, 1848, they obtained a judgment therefor; that execution was issued on this judgment to the sheriff of Onondaga county, on the 25th day of February, 1848, and on the 16th day of May, 1848, returned entirely unsatisfied; and on

the 16th day of September, 1848, they assigned that judgment to Daniel Larned, receiving the whole amount therefor. That on the 27th day of September, 1848, said judgment was assigned to the plaintiff in this suit. That Larned held by assignment, as collateral security for payment of this debt, an article on a house and lot belonging to Kelsey.

Second. That in May, 1846, Kelsey obtained a patent for a beehive. That defendant Lewis M. Eaton, his brother-in-law, made small advances, and assisted him in obtaining his patent, and about that time entered into an agreement with him in relation to the sale of said right, by which they were to divide the avails of sales between them; and made sales to a nominal amount of thirty or forty thousand dollars, but from which was in fact realized but a very small part of that amount. That about the month of December, 1846, Kelsey bought out a small stock of goods in Syracuse, and then became a merchant, in which business he continued for about a year, and until the latter part of November, 1847. That at that time he became much embarrassed, and was trying to sell out. That Eaton understood his business, but advised him to go to New-York again and make heavier purchases; assigning as a reason, that his expenses for clerk hire, rent, &c. would be no more by increasing his stock, and that would enable him to meet his debts easier. That Kelsey went to New-York and made purchases, but lighter than usual, and among others made the debt in question. That soon after he came home, his debts were coming due faster than he could meet them. He was being sued. That in two instances he, with the advice of Eaton, gave a bond and warrant of attorney, on which to enter up judgment at a future day. That before the days thus agreed upon, and on the 26th of November, 1847, and while he was owing about $10,000, Kelsey sold out his entire stock in trade, including fixtures, and some of the goods for which this debt was made, to the defendants Eaton & Spicer, for the amount of $8000; being the amount of goods as estimated by Mr. Parsons, their chief clerk, without an inventory; upon the understanding that they should pay for them by giving their notes for $4000, for 6, 12,

and 18 months, 6 months without interest, and that the amount of money which they had in fact advanced to Kelsey, was to apply on the sale, which would make the $8000, less thirty or thirty-two per cent discount on the goods ; that these notes were to be given after they got their goods to Yates county, and that was the best terms he could sell the goods upon to any one. That he had negotiated with others. That soon afterwards and within a week an invoice of the goods was taken, by which it seems the goods fell short about $1100 from $8000. That the goods were boxed up and taken by Eaton & Spicer to Yates county, where they went into trade. That during the invoicing of these goods, they were levied on by the sheriff, by an execution of about $628 on another judgment against Kelsey, and that Eaton & Spicer settled that execution, and another debt to the same individuals of about the same amount ; taking at the same time a chattel mortgage on the household furniture of Kelsey, and a mortgage on a city lot, encumbered by another mortgage then being foreclosed ; which lot only brought about enough to satisfy the first mortgage. Kelsey testified that at the time this personal mortgage was given, Eaton said he had better give it, to keep his furniture from his creditors. That Eaton & Spicer did not give for the goods their notes, and assigned as a reason that they might have trouble with Kelsey's creditors ; and about the time they were removed, Eaton stated to Woolson, that if they got the goods safe into Yates county, there would be something going to Kelsey on them. The defendants Eaton & Spicer put in evidence an agreement between Eaton and Kelsey, bearing date 23d of December, 1845, in relation to selling said patent, and dividing the avails of the sale. Also a bill of sale of the goods and stock in trade from Kelsey to Eaton & Spicer, dated November 26, 1847, acknowledging the receipt of payment in full for them, $1483 from Eaton & Spicer for money had and advanced, and $6517 from Eaton, purporting to be one third of all the receipts belonging to said Eaton from the sale of a certain beehive, making $8000 without regard to a deduction of 30 or 32 per cent. But the referee came to the conclusion that that statement of payment in full

was put in at Eaton's suggestion, to show to Kelsey's creditors that he had paid for the goods, and that the contract first given in evidence by the defendants, was not the original contract but a copy signed by Kelsey about the time he sold out to Eaton & Spicer, and ante-dated ; and that the subject matter of it had been settled, and formed no part of the consideration for the sale of the goods.     Eaton & Spicer also introduced a power of attorney from Kelsey to Eaton, dated 18th of June, 1846, authorizing said Eaton to sell his patents.     And they proved a general assignment by William R. Kelsey, of his property to Daniel Larned, for the benefit of his creditors, dated 29th of February, 1848.     Considering the supporting evidences and corroborating circumstances, the referee regarded the evidence of Kelsey as unimpeached.     He therefore decided, first, that when this debt was created, Kelsey was on the eve of bankruptcy ; and that by obtaining the goods under such circumstances all the defendants practised a fraud on Lee, Judson & Lee.     Second, that Eaton & Spicer received those goods for the purpose of delaying the creditors of Kelsey in collecting their debts ; and that, having received them under such circumstances, they were liable, and ought to account for them.     Third, that a general assignment executed by Kelsey subsequent to the sale of the goods in question to Eaton & Spicer, did not deprive Lee, Judson & Lee of any remedy they had against said Eaton & Spicer ; and upon the same principle, the referee decided that the security given by Kelsey to Larned did not release Eaton & Spicer from their fixed liability to account for those goods.     Fourth, that this judgment never having been paid, was a subsisting and available claim in the hands of the present assignee ; and that he was entitled to the same remedy against Eaton & Spicer, that Lee, Judson & Lee would have had, had they not assigned it.     The referee also reported that the defendants should pay to the plaintiff $448,04, being the amount of the said judgment, including interest.     And judgment was entered in favor of the plaintiff for that sum, against all the defendants.     Kelsey did not appear, nor put in any answer.

*P. Outwater*, for the plaintiff.

*E. Van Buren*, for the defendants Eaton & Spicer.

*By the Court*, GRIDLEY, J.   This is an action in the nature of a bill in equity, brought by the assignee of a judgment creditor of Kelsey, against him and the two other defendants, Eaton & Spicer, alledging a sale by Kelsey to Eaton & Spicer of his whole property, in fraud of the judgment.   A referee has reported in favor of the plaintiff; and a judgment has been entered on the report, from which judgment the defendants Eaton & Spicer have appealed.

The only grounds relied on by the appellants' counsel are

1st.  That the plaintiff can not maintain this action inasmuch as it appears that after the sale and before the commencement of the suit, Kelsey had made a general assignment in favor of all his creditors.   It is supposed that this claim passed by the assignment, and can only be asserted by the assignee.   This is a mistake.   The general assignee takes no claim which the assignor could not enforce.   His title is derivative merely; and the assignor would be estopped from asserting his own fraud in a suit against his fraudulent vendee.   The case of *Brownell* v. *Curtiss*, (10 *Paige*, 210,) is decisive upon this point.

2dly.  That Kelsey was an incompetent witness for the plaintiff, to prove the sale fraudulent.   (1.) It is said that the witness was interested within the decision in *Rea* v. *Smith*, (19 *Wend.* 293.)   It would be sufficient to say that the objection was not put on this ground, or on any particular ground, before the referee.   Not only must the interest be stated, as the ground of objection, but the nature of the interest must be stated, so that the party may, if in his power, remove it.   Where the nature of the interest was not stated, in the record, though the witness was the vendor of the party, the court would not notice it. (*Cowen & Hill's Notes*, 256.   10 *Martin's Rep.* 633, 8.) (2.) Again; it is insisted, that by sections 343 and 344 of the code, in connection with the cases of *Pillow and Wife* v. *Bushnell*, (4 *Howard's Sp. T. Rep.* 9,) and *M. & F. Bank* v. *Wil-*

Leach *v.* Kelsey.

*bur et al.* (2 *Code Rep.* 33,) Kelsey could not be sworn as a witness. It has not been held that a more stringent rule prevails under the code than existed under the former practice. Kelsey was not examined as a *party* against himself, but he was offered as a witness against his co-defendants, and as such he might have been examined under the 63d chancery rule of the rules of 1847. The only possible objection—that of interest—not having been taken before the referee, was waived. (1 *Cowen & Hill's Notes,* 256, 266.) Kelsey had put in no answer; and there was no issue between him and the plaintiff. The relief to be granted was not necessarily against any party, except Eaton & Spicer. But if it were otherwise, Kelsey was inevitably liable on his judgment, and allowed the complaint to be taken against him without interposing any defence. (*See* 2 *John. Ch. Rep.* 625; 5 *Paige,* 632.)

3dly. It is urged that the report is against evidence. If Kelsey is to be believed, the report was fully warranted, and the credibility of this witness was a question solely for the referee, whose decision we can not supervise.

I have said that there is no objection raised to the report and judgment except those which we have already discussed. It is true that the report is against all three defendants, and the judgment is joint against them. It would have been more in accordance with the old practice to have ordered the two defendants Eaton & Spicer to apply so much of the proceeds of the property fraudulently purchased by them as would be sufficient to pay the plaintiff's judgment and the costs of the suit. But the joining of Kelsey in the report, in the manner the referee has chosen to adopt, is not an error prejudicial to the other defendants, and of which they can justly complain.

We therefore are of opinion that the judgment must be affirmed.

Judgment affirmed.