KEITH, Appellant, *v.* RAMAGE ET AL., Respondents.

(No. 5,076.)

(Submitted March 7, 1923. Decided March 29, 1923.)

[214 Pac. 326.]

*[Attachment—Personal Property Incapable of Manual Delivery —Abandonment by Keeper—Effect on Lien—Sale of Property After Abandonment—Damages for Destruction of Lien—Evidence—Insufficiency.*

Attachment—Personal Property Incapable of Manual Delivery—Substantial Compliance With Statute Necessary.
    1.   The requirements of the statute (sec. 9262, Rev. Codes of 1921) that personal property capable of manual delivery must be attached by taking it into custody, and that property of that description incapable of such delivery must be attached by leaving a copy of the writ with the owner or the person in control of it as his agent, together with a notice that it is attached in pursuance of the writ, must be substantially followed, the statute recognizing no equivalent or evasion, otherwise the attaching creditor acquires no lien upon the property in satisfaction of any judgment he may thereafter obtain.

Same—Abandonment of Property by Keeper in Charge—Effect.
    2.   Where personal property capable of manual delivery is abandoned by the keeper placed in charge of it and the sheriff does not retake or attempt to retake possession, the abandonment is equivalent to a surrender of the property and the attachment is dissolved.

[66 Mont. 578.]

Same—Possession of Property by Officer—Violation—Right of Action.

3. Possession of attached property vests in the attaching officer until the property is disposed of, and his title is not only sufficient to support an action for a violation of such possession, but the right to sue usually rests with him exclusively.

Same—Wrongful Sale of Attached Property—Evidence—Insufficiency.

4. On attachment of real and personal property of a mining company a caretaker was left in charge who some nine months thereafter quit his post, the evidence not showing that the sheriff took or attempted to take possession after that event. Some four years later, and subsequent to the sale of the property by the receiver on foreclosure of a mortgage, plaintiff in the attachment suit obtained judgment and brought an action in conversion against the receiver and his sureties for damages for destruction of his lien by the sale of the property. *Held,* that a nonsuit was properly granted in the absence of evidence showing that the property had been attached in accordance with the statute, that plaintiff has resorted to his right of sale of the real property attached, the value of the same, or whether sufficient or not to pay the judgment, *etc.; held,* further, that the keeper's abandonment of the property dissolved the attachment, and that its subsequent sale on foreclosure did not afford the judgment creditor a right of action for damages against the receiver or his bondsmen.

*Appeals from District Court, Missoula County; Theodore Lentz, Judge.*

ACTION by J. M. Keith against Lawrence A. Ramage and another. From a judgment for defendant, entered on motion for a nonsuit, and an order denying plaintiff's motion for a new trial, he appeals. Affirmed.

*Mr. Elmer E. Hershey* and *Messrs. Murphy & Whitlock,* of Counsel for Appellant, submitted a brief; *Mr. A. N. Whitlock* argued the cause orally.

A defendant who wrongfully deprives a plaintiff of the value of his security, in the form of a lien or otherwise, is liable to the plaintiff for the damage sustained. The general rule is stated at 11 Corpus Juris, page 9, as follows: "Where plaintiff has a lien on the property injured, he may maintain an action on the case where the injury complained of diminishes the value of his security or operates to make it ineffectual. The rule has been approved in *Raymond* v. *Blancgrass,* 36 Mont. 459, 15 L. R. A. (n. s.) 976, 93 Pac. 651. The

rule that the receiver is liable for wrongfully taking possession of property to which he is not entitled, is set out in 47 L. R. A. (n. s.) 755, where many of the leading cases are collected in a note. The rule is approved in "Tardy's Smith on Receivers" at page 216, where a number of cases are cited, among them *Staples* v. *May,* 87 Cal. 178, 25 Pac. 348, holding that where a receiver in a mortgage foreclosure takes property not included in the mortgage, he is liable as a trespasser; and the case of *Kenney* v. *Ranney,* 96 Mich. 617, 55 N. W. 982, holding the receiver liable for sale of property not covered by mortgage under which he is appointed. The leading case of *Kirk* v. *Kane,* 87 Mo. App. 274, is likewise cited upon the point that where a receiver takes possession of property not belonging to the defendant he is in much the same position as a sheriff taking property not belonging to the judgment debtor under color of an execution. The receiver's liability in this connection is likewise discussed in the recent case of *Southwestern Surety Company* v. *Pacific Casualty Co.,* 92 Wash. 654, 159 Pac. 788.

It will doubtless be urged that as a condition precedent to recovery the plaintiff must allege and prove that leave of court was obtained to sue the receiver. There seems to be some conflict of authority, but the better reasoned cases seem to hold that where permission to sue is required, failure to obtain it is not jurisdictional and the appearance of the defendant without raising this question constitutes a waiver thereof. The question is discussed in the Washington case above referred to (*Southwestern Surety Co.* v. *Pacific Casualty Co.,* 92 Wash. 654, 159 Pac. 778) where the authorities are reviewed and, we submit, a correct conclusion reached upon the point. We submit further that in a case such as this one where the liability arises from the unlawful possession and disposition of property, no permission is necessary. (*Curran* v. *Craig,* 22 Fed. 101.)

*Mr. Harry H. Parsons* and *Mr. Carleton Fox,* of the Bar of Wallace, Idaho, for Respondent, submitted a brief; *Mr. Fox* argued the cause orally.

Action on the case for the destruction of an attachment lien upon personal property capable of manual delivery (which under section 9261, Revised Codes of 1921, must be attached by taking into custody), cannot be maintained by the attaching creditor against the attachment debtor or against a third person interfering with the custody of the officer executing the writ; the only remedy of the attaching creditor is against the attaching officer for his failure to maintain his possession, who alone, by virtue of his possession, has such special interest in the property as will sustain trover, conversion or trespass against the person interfering with his possession. (*Ladd* v. *North,* 2 Mass. 514; *Austin* v. *Wade,* 3 N. J. L. 997; *Bennett* v. *Gilbert,* 94 Ill. App. 505, affirmed in 194 Ill. 403, 62 N. E. 847; *Gilfillan* v. *King,* 239 Pa. St. 395, 86 Atl. 925; *Baker* v. *Beers,* 64 N. H. 102, 6 Atl. 35; *Foulks* v. *Pegg,* 6 Nev. 136.) The law is well settled that, if the sheriff abandons the property or fails to maintain his possession, the attachment is dissolved. (*Nicholls* v. *Patten,* 18 Me. 231, 36 Am. Dec. 713.) *Jones Lumber etc. Co.* v. *Faris,* 6 S. D. 112, 60 N. W. 403, is very similar to the case at bar. The facts there were held to show an abandonment of the property originally validly attached. There the sheriff allowed the debtor dominion over a safe. In *Rogers* v. *Maine Central Ry. Co.,* 113 Me. 436, Ann. Cas. 1916B, 999, L. R. A. 1915F, 1184, 94 Atl. 758, the keeper of potatoes attached in a railroad car allowed the crew to move the car. Held an abandonment. (*Bass* v. *Dumas,* 114 Me. 50, 95 Atl. 286; *Field* v. *Fletcher,* 191 Mass. 494, 78 N. E. 107; *Beaulieu* v. *Clark,* 210 Mass. 90, 96 N. E. 319; see, also, *In re Schow,* 213 Fed. 514, 517; *Smart* v. *Sosey,* 49 Cal. App. 232, 193 Pac. 167.)

Even if a valid attachment existed, this did not deprive the owner, or Ramage as receiver, of the right to its possession with the consent of the sheriff; nor did it deprive either of

them of the right to sell the property subject to the attachment. (*Nicholls* v. *Patten,* 18 Me. 231, 36 Am. Dec. 713; *Denny* v. *Willard,* 11 Pick. (Mass.) 519, 22 Am. Dec. 389; *Whipple* v. *Thayer,* 16 Pick. (Mass.) 25, 26 Am. Dec. 626; *Fettyplace* v. *Dutch,* 13 Pick. (Mass.) 388, 23 Am. Dec. 688; *Wheeler* v. *Nichols,* 32 Me. 233; *Walker* v. *Commonwealth,* 18 Gratt. (Va.) 13, 98 Am. Dec. 631; *Arnold et al.* v. *Brown,* 24 Pick. (Mass.) 89, 35 Am. Dec. 296.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action brought to recover damages alleged to have been sustained by the plaintiff, as the successor in interest of William Q. Ranft, by reason of the alleged wrongful sale by defendant Lawrence A. Ramage, as receiver, of property belonging to the Iron Mountain Tunnel Company, hereinafter referred to as the company, which property had theretofore been attached in a suit instituted in the district court of Missoula county on January 13, 1914, by William Q. Ranft against the company to recover money alleged to be due on account of unpaid salary and for money advanced, on account of which sale the plaintiff suffered damage, there being no other property of the company with which to satisfy his demands. The defendant Ramage was not served with process, and the suit went to trial against the defendant National Surety Company alone, as the surety on the bond of Ramage, as such receiver of the company's property. The complaint alleged that certain described real and personal property belonging to the company was regularly attached on or about January 14, 1914, in an action instituted by plaintiff's predecessor in interest, and that the defendant Ramage, as receiver of the company, "wrongfully, illegally, and without right or authority, took the property of the Iron Mountain Tunnel Company, and attached by plaintiff, as aforesaid, and without right sold the same and applied the proceeds derived from said sale to the payment of indebtedness alleged to be due from the Iron Mountain Tunnel Company to others, and deprived the plaintiff of

his prior attachment lien and of the property attached, to plaintiff's damage," *etc.;* there being no allegation that the lien of the attachment continued after the date of the levy, or that it existed at the time of the alleged conversion of the property by the defendant Ramage, or that at the time this action was commenced (more than six years after the levy) it subsisted. A demurrer to the complaint was overruled, and upon issue joined the cause was tried to the court without a jury, and at the conclusion of the evidence the court granted defendant's motion for a nonsuit upon which judgment was entered. The appeal is from the judgment, and from an order denying plaintiff's motion for a new trial.

But one question is presented determinative of this appeal, *viz.:* Did the court err in granting the defendant surety company a nonsuit?

It appears that in the attachment suit the sheriff of Missoula county, to whom the writ was addressed, on January 14, 1914, regularly levied upon and attached several mining claims belonging to the company, and certain other property described as personalty, particularly, as follows: "One hoisting engine, two cages, two pumps, ten boxes explosives, four hammer drills, two piston drills, two dozen picks, one ton steel, one timber hoist, one 24-foot compressor, one 25 H. P. generating set, two 100 H. P. electric motors, one 35 H. P. Hanlage motor, one 25 H. P. electric motor, seven head horses, one saddle horse, four ore wagons, two spring wagons, two logging trucks, four double sets harness, one-half car oats, one-half car hay, one boarding house complete, including all cooking utensils, stoves, tables, and dishes, one storehouse and contents, one office and fixtures, high-tension power line from mine to the town of Paradise, Sanders county, Montana, light system from the mine to Superior, thirty ore cars, one blacksmith shop complete, including all tools."

On March 14, 1914, Ranft died, and the plaintiff herein was thereupon substituted as plaintiff in the attachment suit. On April 2, 1914, an action was commenced by the defendant

herein, Lawrence A. Ramage, as trustee, to foreclose a certain mortgage upon the property of the company, and on April 6, 1914, he was appointed receiver of the company's property, and gave a bond as such with the defendant National Surety Company as his bondsman.

The mortgage which was executed and recorded in March, 1910, covers mining claims described, both patented and unpatented, as well as other real estate, and "also all mines and minerals, mining rights, water rights, which are now owned by the company, including smelters, mills, tramways, railroads, buildings, cables, poles, wires, steam and electric appliances, equipment, machinery, now or at any time hereafter built, located or placed upon any of the aforesaid properties of the company; also power houses and boiler houses, storage warehouses for supplies, cooling towers, bins for loading concentrates, oil tanks, sidings and all fixtures of like character that may be used in connection with the aforesaid property which may hereafter be located, constructed or placed upon any of the said properties or on any land that may hereafter be acquired by the company, together with the company's right, title and interest in any such land when used in connection with the aforesaid properties."

The defendant Ramage, having been appointed trustee on January 16, 1914, and directed by the bondholders to take charge of the company's properties, shortly afterwards took possession thereof. He took charge just after the attachment was levied, and was informed by Jess Daily, the keeper put in charge of the property attached, that the latter was caretaker, and saw notices posted on the property to that effect. Daily had been superintendent for the company before the trustee went into possession, and after the latter's appointment as receiver he was again made superintendent in the operation of the property for the receiver. Ramage, as trustee, took charge of the property, recognizing Daily to be such caretaker, and went ahead and worked it, using the machinery and equipment, and did not take possession thereof under claim of right "until

after Daily quit the job" of keeper. On January 4, 1915, Daily quit as keeper of the property, and on March 6, 1915, instituted an action against the sheriff to recover fees alleged to be due for "thirteen or fourteen months" from January 15, 1914, the date when the former was put in charge as such keeper.

On April 6, 1914, the defendant Ramage was appointed receiver for the company, and gave bond with the defendant National Surety Company as bondsman, the condition of which reads as follows: "Now, the condition of the above obligation is such that, if the said Lawrence A. Ramage shall, according to the law and to the rules and practice of this court, faithfully discharge his duties as receiver herein, obey all lawful orders of this court touching his duties and administration of said estate, and duly account for what he shall receive or have in charge as such receiver, and pay over and apply the same as directed by this court, and perform the duties of his office of receiver in all things according to the true intent and meaning of this order, then this obligation shall be void; otherwise to remain in full force and effect."

On July 18, 1914, a decree of foreclosure of the mortgage was regularly entered, and on May 12, 1915, an order of sale was issued directly to the sheriff of Missoula county, the return thereto showing that there was by him sold the land, mining claims, water appropriations, and "also any and all mines and minerals, mining rights, water rights, including buildings, mills, cables, poles, wire, a telephone and electric line with wire and equipment running from the aforesaid properties to the town of Superior in Mineral county, steam and electric appliances, equipment, tools, and machinery now located upon any of said properties; also power houses, boiler houses, storage warehouses, cooling towers, bins for loading concentrates, oil tanks, sidings and all fixtures; also that certain contract for light and power now had with the Thompson Falls Power Company."

Attached to the return is the receipt to the sheriff, as follows: "This is to certify that I, Lawrence A. Ramage, trustee, and plaintiff in the above-entitled action, and receiver duly appointed by the court in said proceedings, have received from Richard J. Whitaker, sheriff of Missoula county, Montana, the sum of ninety-nine thousand, two hundred and ten dollars and fifty-one cents ($99,210.51), the same being in full of the amount received from the sale of the foregoing property under foreclosure decree of date July 18, 1914, after deducting all costs and expenses in said decree allowed, together with sheriff's commissions. Dated this 24th day of July, A. D. 1915. Lawrence A. Ramage, Plaintiff, Trustee, and Receiver.''

On July 11, 1919, nearly six years after the attachment was levied, and over four and one-half years after the keeper had abandoned the property and after it had been sold on mortgage foreclosure, the plaintiff, Keith, obtained judgment in the attachment suit. An execution having been issued August 2, 1919, and no return made thereon, this action was instituted April 30, 1920. The issues raised by the pleadings, and the meager, disconnected and fragmentary character of the evidence, makes it exceedingly difficult to make a connected recital of the facts. Were we able to avail ourselves of the allegations of fact contained in the answer of the defendant National Surety Company, the task would be far simpler; but they were to great extent put in issue by plaintiff's reply. The evidence shows that there were eight horses, valued at $900, and four sets of harness, valued at $200, levied upon in the attachment suit. Other testimony relates to the granting of a permit to the company to build a power line through the National Forest Reserve, the cost of constructing the power line, the annual depreciation of such line, the value of the material in the line at forced sale, and that the value of the line built from the company's property to the town of Superior is $1,200. There was admission made of the returns made by the sheriff, and proof concerning the mortgage executed by the company on its properties, suit to foreclose the same, and sale thereof by

the sheriff under order of sale. Further testimony was introduced concerning the action brought by Daily against the sheriff to recover keeper's fees, after he had given up his position as caretaker of the property. This testimony, together with the admissions in the pleadings, constituted all there was before the court at the close of plaintiff's case, when the motion for a nonsuit was made and granted. There was no testimony offered that the sheriff, or any one for him, took or attempted to take possession of the attached property after the keeper abandoned it, nor does it appear that the sheriff held the property in his possession under the attachment at the time of its sale on decree of foreclosure. On the contrary, it does appear that the receiver was in charge of the property after the keeper left, to the time of such sale. We cannot see how the trial court, upon this state of the record, could have done otherwise than order a nonsuit.

Plaintiff's position in this action is stated in his brief as [1-4] follows: "The theory of the plaintiff's case is that a portion of the property attached by the plaintiff's predecessor, and particularly the horses, wagons, harness, and power lines, were not covered by the mortgage of 1910, and were therefore subject to attachment; that they were duly attached, and that the receiver thereafter took possession of the same, and sold them, and received the proceeds, and thereby destroyed the lien of the attachment, and made worthless the plaintiff's claim, and that for his acts in this regard the defendant surety company, under the terms of the bond, is liable for the damage sustained."

There is no proof that the plaintiff has resorted to his remedy of sale or attempted sale of the real estate attached, or as to the value of the same, or whether it is sufficient to pay his judgment; nor is there any evidence showing or tending to show that the power lines, mining machinery, and other property incapable of manual delivery was attached in accordance with the statute, or otherwise than by placing a keeper in charge. In fact, it appears that, although execution had been

issued in the attachment suit, it had never been returned by the sheriff, and at the time of the trial of this action the original execution was in the pocket of one of the counsel for the plaintiff. Whether there remained sufficient, or any property belonging to the company from which plaintiff's judgment might have been satisfied in whole or in part is not shown. The statute requires that personal property capable of manual delivery must be attached by taking it into custody (par. 3, sec. 9262, Revised Codes of 1921), and such was the law when the attachment was issued in the case under consideration (sec. 6662, Revised Codes of 1907). Property incapable of manual delivery must be attached by leaving with the person owning the property or having it in his possession or under his control, or with his agent, a copy of the writ, and a notice that the personal property in his possession or under his control, belonging to the defendant, is attached in pursuance of such writ. (Par. 5, sec. 9262, Revised Codes of 1921, being the same as paragraph 5 of section 6662, Revised Codes of 1907, in force when the attachment was issued.) In our opinion, the remedy by attachment being entirely statutory, the requirements of the statute must be substantially followed; otherwise the creditor acquires no superior right or lien upon the debtor's property in satisfaction of any judgment the creditor may subsequently obtain. Here there is no pretense that the mining machinery or power lines, not capable of manual delivery, were attached as by the statute required; in fact, the sheriff's return shows the law was not observed, and, as the property capable of manual delivery was abandoned by the keeper in charge, his action amounted to a surrender by the sheriff of such property held under the attachment. Thereafter the receiver of the property was in absolute and unqualified possession, and the subsequent sale thereof on foreclosure of the mortgage did not afford the attaching creditor a right of damages against the bondsman of the receiver, as is here asserted. The statute requires a specific course to be pursued, and recognizes no equivalent or evasion.

In the case of *Rudolph* v. *Saunders*, 111 Cal. 233, 43 Pac. 619, involving an application of the California statute with reference to the attachment of property incapable of manual delivery, which statute is in the identical language of our own, and from which ours was copied, it appears that the sheriff attached certain growing crops and made return that he took the crops into his possession, failing entirely to leave a copy of the writ and notice of what property had been attached with the party having the property in his custody or control, or with his agent. The court interpreted the application of the language of the statute, as we understand its meaning to be, as follows: "In *Raventas* v. *Green*, 57 Cal. 254, it was held that a growing crop is personal property not capable of manual delivery, and may be properly attached, when in the possession of the defendant in the attachment proceedings, by compliance with the subdivision of section 542 quoted above. The return of the constable fails to show that he served upon the defendant any notice that the property was attached, or that he served a copy of the attachment upon him. The return is not as full as that in *Brusie* v. *Gates*, 80 Cal. 462, 22 Pac. 284, which was held invalid. It is true that was an attachment upon real property, but the requirement of the statute in reference to a service of copy of the writ and notice is in such a case similar to the requirement in attaching personal property not capable of manual delivery; and the reasoning of that case is applicable to, and conclusive of the insufficiency of the return in the case at bar. (See, also, *Watt* v. *Wright*, 66 Cal. 202, 5 Pac. 91; *Sharp* v. *Baird*, 43 Cal. 579.) Proceedings by attachment are statutory and special, and the provisions of the statute must be strictly followed, or no rights will be acquired thereunder. (*Gow* v. *Marshall*, 90 Cal. 567, 27 Pac. 422, and cases there cited.) It is true the return states that defendant attached the property 'by taking in my custody'; but the property, being a growing crop, not capable of manual delivery, could only be attached by service of the writ and a

notice as provided by subdivision 4, section 542, Code Civ. Proc.''

As to the chattels capable of manual delivery taken into possession by the sheriff, the attachment became inoperative when the sheriff surrendered possession and control thereof. It is fundamental that an attachment of property capable of manual delivery rests upon the possession of the attaching officer and is immediately dissolved when the officer parts with his custody thereof.

In the leading case of *Nichols* v. *Patten,* 18 Me. 231, 35 Am. Dec. 713, the court said: ''To preserve an attachment when made, the officer must by himself or his agent retain his control and power of taking immediate possession in all those cases in which the property is capable of being taken into actual possession, unless our statute establishes, as it does in certain cases, a different rule. If he does not do this, the attachment will be regarded as abandoned and dissolved. (*Sanderson* v. *Edwards,* 16 Pick. (Mass.) 144.)'' Possession of attached property vests in the officer until the property is disposed of, and his title is not only sufficient to support an action for a violation of such possession, but the right usually rests with him exclusively. (6 C. J. 314.)

''When the sheriff seizes the goods of a debtor on an execution, to make money of them to satisfy the creditor, he has a special property in the goods; and if they are taken from him, he may maintain trover or trespass against the wrongdoer. The reason of the law is, because he is accountable to the judgment creditor for a sum of money equal to the value of the goods; and it would be unjust if he could not indemnify himself, by the recovery of damages, for the wrongful taking.'' (*Ladd* v. *North,* 2 Mass. 514.)

To preserve an attachment, the officer levying it must retain his control and power of taking immediate possession, and if he fails to do this the attachment will be regarded as abandoned. (2 R. C. L. 867.)

Upon the levy of a writ of attachment, the property attached is in the custody of the law, held to meet and pay any

judgment which the attaching creditor may recover. The surrender of possession by the sheriff of chattels capable of manual delivery works a dissolution.

The case of *Raymond* v. *Blancgrass,* 36 Mont. 449, 15 L. R. A. (n. s.) 976, 93 Pac. 648, cited and relied upon by the plaintiff, is clearly distinguishable from the present case, and is in reality authority contrary to plaintiff's contention in this action. In that case Mary Raymond brought an action against her husband, Pierre Raymond, for separate maintenance, and obtained a decree requiring him to pay her a monthly stipend and other sums. The husband having failed to make any payments to his wife as required by the decree, and having left the state, she brought action against John Blancgrass and others, alleging her rights under the decree, and that the defendants had converted to their own use certain sheep belonging to her husband, thus defeating her right to separate maintenance, with damages resultant. It was held that the complaint did not state a cause of action, the wife as a creditor not having suffered injury different from other creditors.

In the case now before us the alleged conversion could have occurred only at the time when the property was sold on foreclosure, which occurred, as nearly as can be ascertained from the record, some time between the date of the order of sale, May 12, 1915, and July 24, 1915, the date of the receipt given the sheriff by the defendant, Ramage, as receiver. So that the plaintiff did not have a valid and subsisting lien on the property at the time of the sale thereof on foreclosure. He stood in the same relation to the property as other creditors of the company whose claims were unsecured. There is nothing whatsoever in the proof upon which to predicate liability for damages on the part of the receiver or his bondsman, under the terms of the bond, or otherwise.

The judgment and order are affirmed.

*Affirmed.*


MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.