## TAINTOR *against* WILLIAMS.

It is essential to the preservation of a lien created by the attachment of personal property, that possession be taken and held; and when this is relinquished, there is a termination of the lien, and the general owner is remitted to his property unencumbered.

The reason of this is, that possession of personal property is the only *indicium* of ownership; and the suffering of the debtor, after the service of an attachment, to retain the possession, is *prima facie* proof, that the attachment is fraudulent in respect of creditors.

Personal property, not in the actual possession of any one, is in the constructive possession of the general owner.

Therefore, where an officer, by attachment, on the 8th of *May*, took the goods of *A.*, in that part of the house which *A.* occupied, and, without removing them, put them into the custody of *B*; on the next day, *C.*, who lived in another part of the same ouse, at the request of the officer, took the goods into his charge, and had the custody of them until the 10th; from that time until the 12th, they remained in *A.'s* part of the house, under the particular charge of no one; on the 12th, the officer removed them into *C.'s* part of the house, and put them into his possession, but he immediately afterwards bade the officer take them away, declaring, that he wished to have nothing to do with them; there they remained, though not in *C.'s* custody, until the 14th, when they were taken and carried away, by a stranger; it was held, in an action of trespass *de bonis asportatis*, brought by the officer against such stranger, that the plaintiff was not entitled to recover.

THIS was an action of trespass *de bonis asportatis*; tried at *Norwich, January* term 1828, before *Lanman*, J.

On the 8th of *May*, 1827, the plaintiff, a deputy sheriff, by virtue of a writ of attachment against *Joseph C. Beckwith*, took the goods mentioned in the declaration, mostly articles

of household furniture, in the house occupied by *Beckwith* and put them in the custody of one *Chappell*, without otherwise removing them from the possession of the debtor. On the next day, the plaintiff requested *Francis Jones* to take charge of the goods ; who did so, and had the custody of them until the 10th of *May*, at noon. They remained under *Beckwith's* roof until the 12th of *May ;* but in whose possession they were from the 10th to the 12th, did not appear. On the 12th, the plaintiff removed them into the *East* part of the same house, and put them into the possession of *Jones.* Immediately afterwards, *Jones* told the plaintiff to take them out of his part of the house, declaring that he wished to have nothing to do with them. They remained there, however, though not in *Jones's* custody, until the 14th of *May*, when the defendant took them and carried them away. The defendant contended, that to enable the defendant to recover, in this action, it must be proved, that *Jones* had the charge and custody of the goods for the plaintiff down to the time when they were taken by the defendant. But the judge charged the jury, that it was immaterial whether *Jones* consented to take the care and charge of the goods for the plaintiff, after the 12th of *May ;* for that the property was out of the possession of *Beckwith*, and of course, he could not dispose of it to defeat the attachment. The jury returned a verdict for the plaintiff; and the defendant moved for a new trial for a misdirection.

*Isham*, in support of the motion.

*Goddard*, contra.

HOSMER, Ch. J. From the detail of facts, in this case, it appears, that after the property was attached, it was suffered to remain in the house occupied by the debtor and others, six days, and, a part of the time, in the room wherein he resided ; that two days, *viz.* from the 10th to the 12th, it was not in the custody of any one ; and that two days more, that is, from the 12th to the 14th, it was not in the actual possession of *Jones*, or under his oversight, nor in the actual possession of any person. Nor is the slightest necessity for this conduct made to appear. It is not stated, that the plaintiff was so much occupied, by other important business, as to be unable to exercise personal attention to the subject, or to procure a person to do

it, or to remove the property ; and yet the exigency of the case
required it.   *Jones* refused to be the depositary of the goods ; and of consequence, they were not in the custody of any
one.   They, likewise, were within the house, and within the power of the debtor, and all this with the plaintiff's knowledge. The  court should have charged  the jury,  that  the lien by at-tachment had terminated ; and that, on this account, the plain-tiff, not having a special property in, or the actual possession of the goods, could not maintain trespass.

The personal estate of  every debtor is liable to be taken on process,  and held  to  respond  the  judgment  that  may be ren-dered against him.   This is effected,. not  by  permitting it to remain in his possession, but by fastening upon it with a writ of attachment, and holding it in the custody of the law.   Pos-session of personal property is the only *indicium* of ownership ; and the suffering of the debtor, after the service of an attach-ment or an execution, to retain the possession, is *prima facie* proof, that  the attachment or  execution  levy is fraudulent in respect of creditors.   It is of the very essence of a lien by at-tachment, that possession be taken and held ; and when this is relinquished, there is a termination of the lien, and the general owner is  remitted  to  his property unencumbered.   To this point  the decisions of the  courts are  uniform and numerous. *Chancellor* v. *Phillips,* 4 *Dall.* 213.   *United States* v. *Conyng-ham* & al. 4 *Dall* 358.   *Barnes* &  al. v. *Billington* & al. 4 *Day* 81. n.   *Burrows* v. *Stoddard,* 3  *Conn. Rep.* 160. 164. 431.   The plaintiff, then, having abandoned the possession of the goods attached,  the lien upon them was  gone,  and they were  out of  the  custody of  the  law,  when  taken and carried away by the defendant.   Of consequence, the plaintiff had no special property or possession, and cannot sustain the action of trespass.

Instead of charging the jury with the principles before-men-tioned,  and leading their  minds  to  the  enquiry whether the goods attached were  in  the  plaintiff's custody, at the time of the alleged trespass, the judge  took from them the considera-tion of this, the only material question in the case, and assumed a new principle ;  one,  in  my opinion,  altogether inadmissible. They were instructed, " That it was immaterial whether *Jones* consented to take the  care and  charge of  said goods for the plaintiff, after the 12th of *May ;* for that the property was out of the possession of *Beckwith ;* and, of course, he could not

*New-London,*
*July, 1828.*

Taintor
*v.*
Williams.

dispose of it to defeat the attachment." The charge proceeds upon the hypothesis, that whether the plaintiff had possession of the goods or not, was an irrelevant enquiry, as the defendant did not actually possess them. It seems to have been forgotten, that the plaintiff was bound to establish a title, which he could do only by shewing a legal attachment and the actual custody of the goods under it; and if *Beckwith* had not possession, that it would be of no avail in the plaintiff's favour. *Beckwith,* however, had not only title, but the possession also, in contemplation of law. When personal property is not in the actual possession of any one, by the established law, it is in the constructive possession of the general owner, and he may sell and dispose of it at pleasure. *Bro. Abr. tit.* Trespass. *pl.* 303. 346. *Latch* 214. 2 *Bulstr.* 268. *Bac. Abr. tit.* Trespass. C. 2.

On the whole, there is no doubt, that the charge of the judge in this case was incorrect; and, of consequence, a new trial is advised.

DAGGETT, J. was of the same opinion.

PETERS and LANMAN, Js. dissented.

BRAINARD, J. was absent.

New trial to be granted.