[No. 2246]

GEORGE S. GREEN, APPELLANT, *v.* E. U. HOOPER, JOSEPHINE S. HOOPER, C. G. PIERSON, A. A. BURKE, AS SHERIFF OF THE COUNTY OF WASHOE, STATE OF NEVADA, AND W. E. PRUETT, AS TRUSTEE OF E. U. HOOPER, BANKRUPT, RESPONDENTS.

[167 Pac. 23]

1. ATTACHMENT—NATURE OF REMEDY.
   The remedy by attachment is dependent upon statute.

2. ATTACHMENT—PERSONAL PROPERTY—CUSTODY.
   To effect an attachment of personal property it must be taken into the custody of the officer serving the writ, and unless that is done there is no existing attachment.

3. ATTACHMENT—NATURE OF CUSTODY—STATUTE.
   Under Rev. Laws, 5152, providing that personal property capable of manual delivery shall be attached by taking it into custody, the custody required of the attaching officer is such as to enable him to retain and assert his power over the property so that it cannot be withdrawn or taken by another without his knowledge.

4. ATTACHMENT—LIEN—POSSESSION OF ATTACHING OFFICER.
   It is the duty of the attaching officer to take the property attached into his possession, and the lien of the attachment, as to subsequent purchasers and other creditors, is ineffective if the officer abandons his possession.

5. ATTACHMENT — PERSONAL PROPERTY — CUSTODY OF ATTACHING OFFICER.
   When the personal property on which a levy of attachment has been made is left by the attaching officer in the possession of the debtor, it ceases to be in *custodia legis* and may be taken by other creditors.

6. APPEAL AND ERROR—DISSOLUTION—STAY—EFFECT.

Where the court dissolved an attachment of personal property and the attaching officer immediately delivered it over to the debtor and took his receipt therefor, the court's order was executed, and the subsequent appeal and bond staying the execution of the order were ineffective, and the debtor might thereafter dispose of the property as he saw fit.

7. ATTACHMENT — CHATTEL MORTGAGES — EFFECT OF RELEASE FROM ATTACHMENT.

Where an attachment of personal property was dissolved by the court's order and was at once delivered to the debtor upon his receipt therefor, a chattel mortgage, previously filed, covering the property so released from attachment, became immediately effective.

8. BANKRUPTCY—DISSOLUTION OF ATTACHMENT—RIGHT OF SUBROGATION.

An attaching officer, who after the court's order dissolving an attachment of personal property delivered it to the debtor on his receipt therefor, had no right or special property therein, so that there were no rights to which the debtor's referee in bankruptcy could be subrogated.

9. NEW TRIAL—TIME FOR MOTION—WAIVER.

Where respondents became a party to an order of the trial court extending the time in which plaintiff might file his notice of intention to move for a new trial, they thereby waived any objection on the ground that such notice was not served within the time prescribed by law.

10. NEW TRIAL—MOTION FOR NEW TRIAL—WAIVER OF OBJECTIONS.

A party may waive his right to object to any of the proceedings preliminary to a motion for a new trial, or that they have not been taken, filed, or served within the time prescribed by rule or statute.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by George S. Green against E. U. Hooper and others. Judgment for defendants, motion for new trial denied, and plaintiff appeals. Judgment and order **reversed,** with instructions.

*Mack & Green* and *H. D. Danforth,* for Appellant:

The trial court held that the mortgage, "in so far as the personal property herein described is concerned as against the creditors of E. U. Hooper, is invalid for any purpose, void, and of no effect; that plaintiff, George S. Green, has no right, title, or interest in or to, or lien upon said property."

Appellant contends that the mortgage created a valid
and subsisting lien upon the mortgaged personal property;
that the depositing of the mortgage with the county
recorder with instructions to record it and its recordation
was a full compliance with the law, and that, even if the
county recorder failed in the performance of any part of
his duty, the mortgagee is not responsible for or charge-
able with such dereliction; that the chattel mortgage was
made for a then present and actual cash advance and did
not create any preference of creditors within the mean-
ing of the federal bankruptcy act; that not being a fraud-
ulent preference of creditors, it could be recorded at any
time before Hooper was adjudicated a bankrupt, and the
lien would date back to the time of the execution of the
mortgage, and that therefore its rerecordation created a
valid lien relating back to the date of the execution of
the instrument, and is superior to any right of the trustee
in bankruptcy; that C. G. Pierson has no claim at all upon
the mortgaged property, and no lien to which the trustee
in bankruptcy could be subrogated; and that the order of
the court of July 14, 1914, dissolving Pierson's attach-
ment, and the action of the sheriff in surrendering the
property into the possession of Hooper destroyed any and
every claim which Pierson could have, or to which Pruett
could be subrogated as trustee in bankruptcy.

The statutes plainly require the mortgagee under a
chattel mortgage to record his mortgage in the office of
the county recorder, and the duty of properly recording
it is imposed upon that official. There is no provision in
the law fixing the method of recording a mixed mortgage
of chattels and personal property. (*Craig* v. *Dimmock,*
47 Ill. 319; *Fairbanks* v. *Davis,* 50 Vt. 81; *Cleveland* v.
*Empire Mills Co.,* 25 S. W. 1056; *Parker* v. *Panhandle
Nat. Bank,* 34 S. W. 197; *Heflin* v. *Phillips,* 78 Ala. 92;
*Case & Co.* v. *Margine,* 43 Ark. 147; *Meherin* v. *Oaks,* 67
Cal. 58; 6 Cyc. 1087–1090.)

The mortgage was given for an actual present advance
of cash, and not for an antecedent debt. "Liens given or
accepted in good faith and not in contemplation of or in

fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall, to the extent of such present consideration only, not be affected by this act." (Federal Bankruptcy Act, sec. 67d.) "The bankrupt act expressly recognizes as valid mortgages given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice." (Loveland on Bankruptcy, vol. 1, sec. 470, p. 949.)

All the authorities hold that where a chattel mortgage is taken in good faith for a present cash advance, and while the mortgagor is solvent, it may be recorded at any time prior to the adjudication in bankruptcy. (*In Re Klein,* 197 Fed. 241; *In Re Sturtevant,* 188 Fed. 196; *Davis* v. *Hanover,* 210 Fed. 768; *Debus* v. *Yates,* 193 Fed. 427; *Carey* v. *Donahue,* 240 U. S. 430.)

The burden of proof was upon the respondents in their effort to set aside a preference or fraudulent conveyance, to plead, prove, and establish the facts constituting such preference or fraudulent transfer within the meaning of the bankruptcy act. There was neither allegation nor proof of a preferential or fraudulent transfer. (Loveland on Bankruptcy, secs. 544, 545.)

The judgment of the district court discharging and dissolving the attachment in the action of *C. G. Pierson* v. *E. U. Hooper* was a final and conclusive adjudication that the personal property was exempt from attachment and execution until reversed on appeal. This court has repeatedly held that a judgment of the district court is final and *res adjudicata* until reversed on appeal. (*Young* v. *Brehe,* 19 Nev. 379; *Cain* v. *Williams,* 16 Nev. 426; *Rogers* v. *Hatch,* 8 Nev. 35; 23 Cyc. 1233.)

*Cheney, Downer, Price & Hawkins,* for Respondents:

Appellant does not appear from the record to have been injured by reason of the judgment or decree entered; the judgment was in favor of appellant, from which he

cannot appeal, and the judgment and decree were right and proper, and should be affirmed.

Our statute (Rev. Laws, 1080) states: "No mortgage of personal property shall be valid for any purpose against any other person than the parties thereto, unless possession of the mortgaged property be delivered to, and retained by the mortgagee"; and it provides further for the securing and keeping of books "for the recording of all chattel mortgages," and also declares that "all chattel mortgages shall be recorded therein." The chattel mortgage in this case, in so far as it is called in question, never was, and is not now, valid for any purpose, because as a part of its execution and as a condition precedent to its validity it was not recorded as required by statute. (*Simpson* v. *Harris*, 21 Nev. 353, 370; *Knickerbocker Trust Co.* v. *Penn. Cordage Co.*, 55 Atl. 231.)

The fact that the mortgage was of real estate and of personal property, and was filed for record and recorded as a real estate mortgage, did not satisfy the mandatory requirements of the statute, or the construction thereof in *Simpson* v. *Harris, supra*, where it is said that a mortgage not "recorded in strict compliance with the statute is absolutely void." The statute in express words requires that there shall be an actual recording in books specially provided for the purpose. "We cannot agree with counsel for the appellant that the record of a mortgage of real estate in the office of the register of deeds is notice to the world of the mortgage of chattels included in the same instrument, and it is not the place provided by law for obtaining such notice, and it cannot be supposed that interested parties will look there for such mortgages. 'A public record is not notice for any purpose not declared by statute.' (*Burton* v. *Martz,* 38 Mich. 762.)" (*Ramsdell* v. *Citizens E. L. & P. Co.*, 61 N.W. 275.)

By the Court, MCCARRAN, C. J.:

As security for a lien of $1,200, appellant took a promissory note signed by E. U. Hooper and Josephine

S. Hooper, his wife; and to secure the payment of said promissory note, the Hoopers made and delivered a real estate and chattel mortgage covering certain real property in the city of Reno, and also the machinery and implements used by Hooper in his vocation. This mortgage was made on March 17, 1913, and on the following day, March 18, the instrument was filed with the county recorder of Washoe County and by him recorded in a book containing the records of realty mortgages. On June 4, 1914, C. G. Pierson commenced an action against the respondent E. U. Hooper, and caused a writ of attachment to issue. On June 11, 1914, the mortgage given by the Hoopers to Green, the appellant here, was again filed for record with the county recorder, and was recorded as a chattel mortgage. On the same day, to wit, June 11, Green, the appellant here, commenced suit to foreclose the mortgage. On June 14, 1914, pursuant to motion, the district court set aside and discharged the attachment as to certain mentioned articles of machinery and equipment used by Hooper in his regular vocation, which said articles were included in the mortgage given by the Hoopers to Green. On the same day on which the order discharging and dissolving the judgment was entered, to wit, June 14, 1914, the property was delivered to Hooper by the sheriff of Washoe County, the attaching officer. The sheriff demanded and received a receipt for the property from Hooper, and never again attempted to take control or possession of the property or to exercise any control over it. From that time until the property was taken in charge by the referee in bankruptcy it remained in the possession, custody, and control of Hooper. On July 25, 1914, Hooper filed a petition in voluntary bankruptcy, and on the same day he was adjudged a bankrupt. On July 18, 1914, C. G. Pierson perfected his appeal from the latter order of the district court dissolving and discharging the writ of attachment, and at the same time secured an order of the district court, made by the same judge who had made the order dissolving the attachment,

staying the operation of said order dissolving the said attachment and fixing the amount of a stay bond in the sum of $3,000, which bond was given and approved.

Section 405 of our code of civil procedure, as amended by the legislature of 1915, provides:

"If the appeal be from a judgment or order directing the payment of money, or from an order dissolving or refusing to dissolve an attachment, it shall not stay the execution of the judgment or order unless a written undertaking be executed on the part of the appellant, by two or more sufficient sureties, stating their place of residence and occupation, to the effect that they are bound in double the amount named in the judgment or order, or double the sum of the value of the property attached, as the case may be; that if the judgment or order appealed from, or any part thereof, be affirmed, or such appeal be dismissed, the appellant shall pay the amount directed to be paid by the judgment or order, or the part of such amount as to which the judgment or order shall be affirmed, if affirmed only in part, and all damages and costs which shall be awarded against the appellant upon the appeal, and that if the appellant does not make such payment within thirty days after the filing of the remittitur from the supreme court, in the court in which the appeal is taken, judgment may be entered on motion of the respondent, in his favor against the sureties for such amount, together with the interest that may be due thereon and the damages and costs which may be awarded against the appellant upon the appeal. When the judgment or order appealed from is made payable in a specified kind of money or currency, the undertaking required by this section shall be drawn and made payable in the same kind of money or currency specified in said judgment or order, and in case of any appeal from an order dissolving or refusing to dissolve an attachment, such undertaking shall be conditioned that if the order appealed from or any part thereof be affirmed, the appellant shall pay to the opposing party,

on such appeal, all damages and costs caused by him by reason of said appeal and the stay of execution thereon." (Stats. 1915, p. 219.)

The trial court held that the mortgage, in so far as the personal property therein described is concerned, as against the creditors of E. U. Hooper, is invalid for any purpose, void, and of no effect; that plaintiff George S. Green, appellant here, has no right, title or interest in or to or lien upon said property.

Of the several contentions relied upon by appellant for a reversal of this judgment, we shall confine ourselves to but one.

The trial court took the position, and by reason of such position the judgment followed, that notwithstanding the order of the district court made June 14, 1914, dissolving the attachment and discharging the property from the lien, and notwithstanding the delivery of the property by the attaching officer to the defendant in that case, nevertheless the property was at all times, after the levy of the attachment by the sheriff, *in custodia legis* and at all times subject to the attachment lien; that the latter took precedence over the mortgage and that the referee in bankruptcy was subrogated to the rights of the attaching officer.

It is the contention of appellant here that on the making of the order dissolving the attachment and on the delivery of the property by the sheriff to the respondent Hooper, the chattel mortgage made by Hooper and his wife to appellant, having been recorded in the interim, became immediately effective. On the other hand, it is the contention of respondents that the referee in bankruptcy became subrogated to the rights of the attaching officer, and the property should be retained in the estate of the bankrupt and disposed of for the benefit of his creditors.

**1.** While the remedy by attachment as it now exists in many of the jurisdictions of the United States was not of common-law origin, a somewhat similar process, whereby a creditor under some circumstances might attach his

debtor's property as security for the obligation, was of ancient usage in the English law. (*Barber* v. *Morgan*, Ann. Cas. 1912D, 951; *Franklin Bank* v. *Bachelder*, 39 Am. Dec. 606.)

The remedy as now recognized in the states of the union is of comparatively recent origin and is dependent upon statute.

**2.** In the first place, it may be observed that in order to effect an attachment of personal property, it must be taken into the custody of the officer serving the writ. Until this is done, no attachment can be said to exist. (Freeman on Executions, sec. 262; Wade on Attachment, vol. 1, sec. 129; Drake on Attachment, sec. 292.)

**3.** The statute of Nevada (Rev. Laws, 5152), as to how an attachment may be executed, prescribes:

"2. Personal property capable of manual delivery shall be attached by taking it into custody."

As to the nature of the custody required of an attaching officer in order to continue the lien in effect, the rule has been variously stated, but we think it may be asserted as a general rule that the custody required of the attaching officer should be such as to enable the officer to retain and assert his power and control over the property so that it cannot probably be withdrawn or taken by another without his knowing it.

**4.** It has been stated as a proposition of law, and such is well supported by authority, that it is the duty of the attaching officer to take the property attached into his possession; and the lien of such attachment, so far as subsequent purchasers and other creditors are concerned, is dependent upon the continuance of such possession. If, therefore, the officer abandons his possession, the lien will be ineffective as against such. (*Chadbourne* v. *Sumner*, 16 N. H. 129; *Sanford* v. *Boring*, 12 Cal. 539; *Taintor* v. *Williams*, 7 Conn. 271; *Nichols* v. *Patten*, 18 Me. 231; *Baldwin* v. *Jackson*, 12 Mass. 131; *Sanderson* v. *Edwards*, 16 Pick. 144.)

In the case of *Gower* v. *Stevens*, 19 Me. 92, the rule is stated that:

"To constitute and preserve an attachment of personal property, by process of law, the officer serving such process must take the property and continue in possession of it either by himself, or by a keeper by him appointed for this purpose. It has never been understood that he could, consistently with the preservation of the lien, constitute the debtor his agent to keep the chattels attached. Except so far as authorized by special statute provision, he cannot leave such property with the debtor, without dissolving the attachment."

To the same effect are the cases of *Becker* v. *Steele*, 41 Kan. 173, and *Loveland* v. *Alvord Con. Quartz M. Co.*, 76 Cal. 562.

5. On the question of abandonment or discharge of the attachment, the courts are not altogether uniform in the interpretation of the law as to the effect of such an act. But the rule supported by the greater weight of authority, and which we will assert here, is that when the personal property on which a levy of attachment has been made is left by the attaching officer in possession of the debtor, the property ceases to be *in custodia legis* and may be taken by other creditors. (*Root* v. *Railroad Company*, 45 Ohio St. 228; *Jones Lumber Co.* v. *Faris*, 55 Am. St. Rep. 814.)

In *Root* v. *Railroad Company, supra,* the court says:

"A different holding would be lacking in principle, as all the authorities agree that the property must be seized in attachment or the court acquires no jurisdiction over it; and that no seizure can be effected unless the officer takes it into his custody; and if he voluntarily abandons its custody to the debtor or his agent, the attachment ceases to exist."

See, also, Ruling Case Law, vol. 17, p. 235, *et seq.*, and Ruling Case Law, vol. 2, p. 866, *et seq.*

6. The entire question here turns upon the act of the attaching officer in delivering the property to Hooper the day following the entry of the order of the district court dissolving the attachment. It will be observed that not only did the officer deliver the property over to Hooper,

but required that the latter give him a receipt for the same. The court had set the property free from the attachment; the attaching officer, pursuant to the order of the court, had delivered the property to the defendant in that action. It was not until some days later that the plaintiff Pierson filed his notice of appeal and bond staying the execution of the order. But the order had already been executed.

It will be noted that the statute prescribes no time at which such stay of execution may be effected. Presumedly the execution may be stayed at any time within which the appeal might be taken; but what is the condition of the property attached in the meantime? Who is in custody of that property? Who is in control? The attaching officer had been ordered by the district court to release the same, and when that order was filed it became immediately effective. By what authority would the attaching officer refuse to obey the mandate of the district court whereby the writ of attachment was dissolved? And when that officer, in obedience to the order of the district court, released the property from his custody and control, turned the same over to the defendant, there was then nothing effective to prevent the defendant from disposing of the property as he might see fit. (*Ranft* v. *Young*, 21 Nev. 401; *Hackett* v. *Manlove*, 14 Cal. 85.)

7. On the delivery of the property to the defendant Hooper by the attaching officer, the chattel mortgage theretofore filed, and which covered the property released from the writ of attachment, must in the very nature of things have become immediately effective, and in fact the mortgagee might have taken possession of the same.

Drake on Attachments, 7th ed., sec. 426, resolves the question thus:

"When an attachment has been dissolved, by reason of a judgment in favor of the defendant, or otherwise, the special property of the officer in the attached effects is at an end, and he is bound to restore them to the defendant, if he is still the owner of them, or if not, to the owner.

\* \* \* If he fail to make such return, he is liable for the property. His informing the defendant that he has relinquished the attachment, while he keeps the property locked up in the house in which it was attached, is no return of the property. And he cannot screen himself from this liability by delivering the property to the plaintiff. It is not his duty—indeed it would be contrary to his duty—to make such a delivery to the creditor, even after his demand is ascertained and sanctioned by a judgment. Goods attached are in the legal custody of the officer, and he is accountable for them, no less to the defendant than to the plaintiff in the attachment; and the general property in the goods is not changed, until a levy and sale under execution."

The Supreme Court of Minnesota had presented to it the identical question under consideration here and under circumstances and conditions most analagous to those presented in this record, and in view of the similarity of the facts, as well as of the statutes, and inasmuch as the reasoning there is in our judgment correct, we quote from the opinion in that case which, after adopting the foregoing excerpt from Drake on Attachments, proceeds as follows:

"This is certainly the logical rule, for, the writ being his only authority for keeping the property from the owner, such authority is gone when the writ is dissolved. It is true that under our practice the plaintiff may, by appealing from the order dissolving the writ and giving the bond for a stay, suspend the operation of the order, and that such suspension will relate back to the date of the order, so that, if the officer still has the property, his right to hold it is restored; and it may also be, as between the parties to the writ, that if between the date of the order and the appeal with a stay, the sheriff has returned the property to the defendant, the appeal and stay reinstates the lien so that the plaintiff may require the sheriff to retake the property. Neither of these, however, is this case. Here the question is, Is it the duty of the sheriff to retain the property after the dissolution of

the writ, which is his only warrant for holding it, to enable the plaintiff to determine whether he will appeal, and to perfect the appeal and stay, if he decides to take that course? The statute is silent on the point. If it be his duty to still hold the property, for how long must he hold it? Some authorities suggest that he should hold it for a reasonable time. But who is to determine what is a reasonable time? If that be the rule, the officer will be liable to the plaintiff in case he return the property to the defendant before the end of a reasonable time, and to the defendant in case he refuse to return it on demand after such reasonable time. The position of the officer would be a hard one if he must take the risk of the court or jury trying the action against him, agreeing with him as to what is a reasonable time. We think it is for the plaintiff, and not the sheriff, to do what may be necessary to preserve the interest of the former in case of a dissolution of the writ." (*Ryan Drug Co.* v. *Peacock,* 40 Minn. 470, 42 N. W. 298.)

Following the rule of law that we have attempted to set forth, it appears to us conclusive that upon the delivery of the property by the sheriff to the defendant Hooper it was no longer *in custodia legis*, nor was the writ of attachment in any wise effective as a levy on that particular property, nor did the stay of execution either revive the writ or retake the property. The chattel mortgage given by the defendant in that action to the appellant here having been recorded and the action in foreclosure having been instituted, the property thus released from the effect of the writ of attachment was immediately subject to the mortgage and subject to the foreclosure proceedings.

8. After releasing the property subject to the order of the district court, the attaching officer had no right or special property therein. This being true, there were no rights to which the referee in bankruptcy could be subrogated.

9. Respondents here contend that the notice of motion

of intention to move for a new trial was not filed or or served within the time prescribed by law, and hence contend that the trial court was without jurisdiction to hear and determine the motion for a new trial. Whatever merit there might be in the contention of respondents, it appears to us that they became a party to the order of the trial court extending time in which for appellant to file his notice of intention to move for a new trial. The record of the proceedings in open court on the day on which the judgment was rendered discloses the following:

"Mr. Green—If the court please, we desire at this time to apply to the court for thirty-days' stay of any execution of the judgment. Of course, we cannot accept any part of the judgment, as we intend to appeal from the judgment, the entire judgment, and we would like to have thirty-days' stay of execution in which to prepare our record and serve.

"The Court—You mean—

"Mr. Green—Expect to make a motion for a new trial.

"The Court—You mean time to make a motion for a new trial?

"Mr. Green—Well, we will have to have thirty days to get the record.

"Mr. Hawkins—You don't have to have any record for a motion for a new trial.

"Mr. Green—We want thirty days, because I will be busy with other matters, in that other proceeding, and let that thirty days cover the period for us to give notice of intention to move for a new trial.

"The Court—Let me see—it is ordered that the plaintiff have up to and including the 17th day of April in which to serve notice of intention to move for a new trial. Now what else do you want?

"Mr. Green—And a stay of execution of the judgment during that time.

"The Court—Can I grant that without a bond?

"Mr. Green—Well, it can be granted, but we can give a

bond if it is necessary. The execution of this judgment can be stayed without bond.

"The Court—Maybe it will not be necessary to do that, if counsel will stipulate with you that there will be no execution issued for that period.

"Mr. Hawkins—I don't object to that.

"The Court—It is stipulated that no execution shall issue for thirty days—now, you want also included in this order that you—what other papers do you want filed? This only stays the suit as to the notice of intention to move for a new trial. Now what else—

"Mr. Green—Don't want anything. File a notice of intention to move for a new trial.

"The Court—You want thirty days in which to do that?

"Mr. Green—Yes, thirty days' stay of execution.

"The Court—Well, he has stipulated there will be no · execution for thirty days."

While we might with propriety regard the conduct and utterance of counsel for respondents in open court at the time at which the order extending time was entered as tantamount to a stipulation, it will in this instance be unnecessary, inasmuch as counsel's conduct and action in that instance and on that occasion, in our judgment, constituted a waiver of any objection that he might have to the trial court entertaining the motion for a new trial at or within the time embraced within the order.

**10.** It will not, in our judgment, be seriously denied that a party may waive his right to object to any or all of the proceedings preliminary to a motion for a new trial, or that the same have not been taken, filed, or served within the time prescribed by rule or statute. If these statutory times and conditions may be waived by silence, much more so may they be waived by stipulation or affirmative acquiescence.

Other matters set up in respondents' motion to dismiss appear to us to be without merit.

The judgment and order appealed from is reversed, with instructions to the trial court to reframe the decree

and judgment so as to make the same effective as to the personal property here in question.

It is so ordered.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.