E. H. BEEMER, Plaintiff and Respondent, *v.* E. J. SEABORN, Defendant and Appellant, and LINDLEY & COMPANY OF NEVADA Et Al., Interveners and Appellants

No. 3017

May 26, 1933.

*Harwood & Diskin,* for Appellant Seaborn, and *E. F. Lunsford* and *John S. Sinai,* for Interveners:

*Chas. A. Cantwell,* for Respondent:

## OPINION

By the Court, COLEMAN, J.:

This action was instituted by E. H. Beemer, county clerk, as plaintiff, on December 12, 1932, against Riverside Bank, a corporation, to recover a money judgment.

On motion, E. J. Seaborn, state bank examiner, was made a party defendant. Thereafter, other parties intervened. On the day the action was commenced a writ of attachment was issued and placed in the hands of Russell Trathen, the sheriff, who undertook to levy upon cash and other personal property of the respondent bank, and made a return to the effect that he had attached said property.

In due time E. J. Seaborn, as state bank examiner, made a motion to dissolve and discharge the writ of attachment, and for an order adjudging that the levy of said writ, if any was made, was null, void and of no effect.

Numerous grounds are given as a basis for said motion, but, viewing the situation as we do, it is unnecessary to consider but one of them, viz, that if said writ was levied it was after the money and property had been taken possession of by E. J. Seaborn, as state bank examiner, pursuant to law.

The motion to dissolve was heard upon affidavits and counter-affidavits. The court entered an order denying the motion, from which an appeal has been taken.

The affidavit of E. J. Seaborn recites that pursuant to "An act to regulate banking and other matters relating thereto" (sec. 650 N. C. L., et seq.), he, on December 12, 1932, at the hour of 2:45 p. m., took possession of all of the assets of the Riverside Bank, by entering into said bank and notifying the cashier of said bank that he was taking possession of the business and assets thereof, and by immediately placing a written notice on the front door of. said bank to that effect; that he thereafter proceeded to count the money on hand in said bank. That at the time he so took possession of said bank and its assets Russell Trathen, the sheriff of Washoe County, and his deputy, were in said bank; that after said cash was counted a discussion was had between the affiant and the sheriff, during which affiant talked over the telephone with the attorney-general of the state, and that talks were also had with the district

attorney of Washoe County and a private attorney; that as a result of these conversations it was agreed that affiant should deduct from the cash he counted the amount set forth in the writ of attachment, plus expenses, which should be placed in a safety deposit box within the bank, which was done; that said box can be opened only by the use of two keys; that one of said keys was given to the sheriff, that the other key (master key) has at all times since said day been in the hands of an appointee of affiant. Affiant further states that some time prior to December 12, 1932, the governor of the state had declared a banking holiday, which was still in effect.

Russell Trathen filed a counter-affidavit, in which he states that on the 12th of December, 1932, he was given for service the writ of attachment mentioned; that at about the hour of 2:30 p. m. of said day, accompanied by his under-sheriff, he entered said bank; that he handed to Roy Frisch, whom he found in charge thereof, a copy of the complaint and summons and writ of attachment, and told him that he would have to have the amount of money stated in the writ. That Frisch asked permission to talk with his attorney, and that after such conversation Frisch informed affiant that he could not pay over any money whatever; that affiant informed Frisch at this time that in that event it would be necessary for him to take possession of the bank and its contents, and that he would leave a man in charge; "that while this discussion was going on between Frisch and myself, State Bank Examiner Seaborn entered with his deputy, Trabert, and when I next noticed them they were in one of the teller's booths counting cash. I went over and tapped Seaborn on the shoulder and said: 'I'm a little ahead of you. I have already levied a writ of attachment.' Seaborn said, 'I'm taking charge of everything.' I said, 'Not the amount of money involved in this writ.' He said then, 'Do you mind if I talk with Mashburn (attorney-general)?' I said, 'No,' and then he phoned Mashburn."

Affiant Trathen further states that as a result of further conversations between attorneys the sum of $20,915.68 was turned over to him under the writ, and that he rented a safe deposit box, into which the money was placed, and that he was given the keys to the box.

Other affidavits are filed and further matters are stated in the affidavits, but in the view we take it is not necessary to recite them.

■ To constitute a levy upon personal property capable of manual delivery, under a writ of attachment, there must be an actual taking of possession (sec. 8708 N. C. L.).

McCARRAN, C. J., in Green v. Hooper, 41 Nev. 12, 167 P. 23, in construing the provision mentioned, said:

"As to the nature of the custody required of an attaching officer in order to continue the lien in effect, the rule has been variously stated, but we think it may be asserted as a general rule that the custody required of the attaching officer should be such as to enable the officer to retain and assert his power and control over the property so that it cannot probably be withdrawn or taken by another without his knowing it.

"It has been stated as a proposition of law, and such is well supported by authority, that it is the duty of the attaching officer to take the property attached into his possession; and the lien of such attachment, so far as subsequent purchasers and other creditors are concerned, is dependent upon the continuance of such possession. If, therefore, the officer abandons his possession, the lien will be ineffective as against such (Chadbourne v. Sumner, 16 N. H. 129; Sanford v. Boring, 12 Cal. 539; Taintor v. Williams, 7 Conn. 271; Nichols v. Patten, 18 Me. 231; Baldwin v. Jackson, 12 Mass. 131; Sanderson v. Edwards, 16 Pick. 144.)"

■ We are clearly of the opinion that the order appealed from must be reversed for the reason that it appears from the affidavit of Sheriff Trathen that at the time the bank examiner took possession no attachment had been levied.

It appears from Trathen's own affidavit that when Frisch informed him that no money would be paid over to him, he stated to Frisch that in that event it would be necessary for him to take possession of the bank and its contents, and that while the discussion was going on between himself and Frisch he observed Seaborn and his deputy in one of the tellers' booths counting cash. By the affidavit he admits that he had not taken possession before he saw Seaborn counting cash. His very statement is an acknowledgment of his consciousness of the fact that he was not in possession. Seaborn had posted his notice and had taken actual possession of the money prior to the time when Trathen determined in his own mind that he was not in possession and would have to take possession. We readily admit that whatever might have been Trathen's mental processes, if he were actually in possession when Seaborn appeared the facts would control; but from every viewpoint it is clear that Trathen never took possession under the writ.

It is not contended that the placing of the money in the safety deposit box after Seaborn took possession constitutes a levy. From the time Seaborn took possession the money was in custodia legis, and it is not claimed that rights could be changed by that act.

Order reversed.

### ON PETITION FOR REHEARING

June 23, 1933.

*Per Curiam:*

Rehearing denied.