980 F.2d 1254
 Bankr. L. Rep. P 75,032
In re Norman B. JENSON, Debtor.
FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for
Alliance Federal Savings and Loan Association, Appellee,
v.
Norman B. JENSON, Debtor-Appellant.
 No. 91-15479.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1992.
Decided Dec. 1, 1992.
 
 Thomas J. Gilloon, Las Vegas, Nev., for debtor-appellant.
 Laurel E. Davis, Lionel, Sawyer & Collins, Las Vegas, Nev., for appellee.
 Appeal from the United States District Court for the District of Nevada.
 Before GOODWIN, SCHROEDER and BEEZER, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Norman Jenson, a chapter 11 debtor, appeals the district court's order affirming a bankruptcy court ruling in favor of the Federal Deposit Insurance Corporation (FDIC) in Jenson's action seeking to avoid the lien created by a writ of attachment obtained by the FDIC. We affirm.
 
 I. BACKGROUND
 
 2
 This litigation began in June 1986 when the Federal Savings & Loan Insurance Corp. (FSLIC), as receiver for Alliance Federal Savings and Loan Association (a failed Louisiana thrift institution) sued Jenson and Michael Speaks to recover the deficiency remaining after a May 1986 foreclosure sale of a casino encumbered by a security interest given to Alliance by Jenson and Speaks.[1]
 
 
 3
 On July 2, 1987, the district court issued a writ of attachment in the deficiency action which attached Jenson's principal asset, a one-third interest in a second deed of trust on another Las Vegas casino. Pursuant to Nev.Rev.Stat. § 31.017(5), the writ of attachment was issued without bond in an ex parte proceeding on the basis of affidavits submitted by the FSLIC's counsel. Jenson filed a motion to discharge the writ of attachment on August 5, 1987, arguing that NRS § 31.017(5) was unconstitutional on its face and as applied. The district court denied the motion on October 21, 1987.
 
 
 4
 The district court refused to certify an interlocutory appeal under 28 U.S.C. § 1292(b), and Jenson's two emergency petitions for writ of mandamus were denied by this court in January and March of 1988. Monthly payments on the deed of trust in the amount of $18,760, together with a balloon payment of $554,225, had been paid to the United States Marshall by the time the note was paid off in February 1988.
 
 
 5
 On July 1, 1988, Jenson filed a petition under Chapter 11 of the Bankruptcy Code. Because no judgment had been entered against Jenson in the pre-petition deficiency litigation, the FSLIC's security interest in the writ of attachment remained unperfected. As part of the bankruptcy proceedings, Jenson filed an adversary complaint against the FDIC (as successor-in-interest to the FSLIC) seeking to avoid the writ of attachment as a preference or as a fraudulent conveyance. On October 17, 1988, the FDIC petitioned for relief from the 11 U.S.C. § 362(a) automatic stay to proceed to judgment in its deficiency action. The bankruptcy court denied the motion. Meanwhile, on October 12, the FDIC had filed a proof of claim in the bankruptcy court based on its claims asserted in the deficiency action. On October 31, Jenson filed an objection to the proof of claim, in which he raised various constitutional claims challenging the writ of attachment, as well as contract and tort defenses to the underlying deficiency action by the FDIC. By agreement of the parties, the district court on December 8, 1988, referred the deficiency action to the bankruptcy court for trial and entry of judgment.
 
 
 6
 The deficiency action, Jenson's objection to the FDIC's proof of claim, and Jenson's adversary complaint to avoid the writ of attachment were consolidated by order entered January 11, 1989, and a trial was held in the bankruptcy court on May 17-19, 1989. On July 5, 1989, the bankruptcy court entered judgment for the FDIC in the deficiency action in the amount of $1,745,000 plus interest to accrue from that date. The bankruptcy court did not formally allow the attachment lien as a secured claim, however, and it did not grant the FDIC relief from the automatic stay to execute on its judgment. Jenson filed an untimely appeal from this judgment, which was dismissed by the Bankruptcy Appellate Panel for lack of jurisdiction.
 
 
 7
 On April 2, 1990, the bankruptcy court entered findings of fact and conclusions of law, a judgment, an order dismissing the three consolidated proceedings, an order granting relief from the automatic stay, and an order directing payment of the funds held by the U.S. Marshall pursuant to the attachment. The court also ordered that $11,888 be paid to the IRS on an unrecorded tax lien and that $9,515 be paid to Jenson's attorney. The assets subsequently were disbursed. Jenson appealed to the district court, and on March 5, 1991, that court affirmed the bankruptcy court's judgment. Jenson then timely appealed to this court.
 
 II. THE ATTACHMENT
 
 8
 On appeal, Jenson argues that the FDIC's attachment of his principal asset was a preferential transfer. He also contends that the district court erred in refusing to reconsider a 1987 district court order denying his pre-bankruptcy motion to discharge the writ of attachment. He challenges the district court's issuance of the ex parte writ of attachment on the ground that it deprived him of due process and equal protection of the laws and constituted a taking without just compensation. Jenson further contends that the district court denied him due process when it misallocated the burden of proof and refused to consider his affirmative defenses during proceedings to dissolve the attachment.
 
 
 9
 The FDIC maintains that Jenson's constitutional claims are barred by res judicata. When there has been a final judgment on the merits by a court of competent jurisdiction, the doctrine of res judicata, or claim preclusion, bars the parties or their privies from relitigating issues that were or could have been raised in the prior proceeding. See, e.g., Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981); Robi v. The Five Platters, Inc., 838 F.2d 318, 321-22 (9th Cir.1988). The preclusive effect of a prior judgment is a question of law subject to de novo review. Guild Wineries & Distilleries v. Whitehall Co., 853 F.2d 755, 758 (9th Cir.1988).
 
 
 10
 Jenson's constitutional challenge to the Nevada attachment statute is barred by res judicata if it was the subject of a prior final judgment. Here there are two candidates for a preclusive prior judgment: the district court's October 21, 1987 order denying Jenson's motion to vacate the writ of attachment, and the bankruptcy court's July 5, 1989 judgment in favor of the FDIC in the deficiency action.
 
 A. The October 1987 Order
 
 11
 The district court treated the former adjudication as the preclusive event, holding that the October 21, 1987 order denying Jenson's motion to discharge the writ of attachment was res judicata with respect to Jenson's present constitutional challenge to NRS § 31.017(5). The October 1987 order, however, was plainly interlocutory.
 
 
 12
 To be given preclusive effect, a judgment must be a final adjudication of the rights of the parties and must dispose of the litigation on the merits. See 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4427, at 269-70 (1981 & Supp.1991) [hereinafter Wright & Miller]. Because the October 1987 order did not dispose of the deficiency action on the merits, it is not a final order.[2] Nor does it fall within the collateral order exception to the finality rule. See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546-47, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949). Whereas appeals from orders denying provisional remedies frequently have been held to satisfy the Cohen collateral order doctrine, orders confirming or refusing to vacate attachments generally do not constitute final appealable orders under Cohen. See Pride Shipping Corp. v. Tafu Lumber Co., 898 F.2d 1404, 1407-08 (9th Cir.1990); Lowell Fruit Co. v. Alexander's Market, Inc., 842 F.2d 567, 568-70 (1st Cir.1988) (per curiam). But see United States v. Spilotro, 680 F.2d 612, 615-16 (9th Cir.1982) (exercising jurisdiction over interlocutory appeal of pretrial seizure of nearly all of criminal defendant's real and personal property). See generally 15A Wright & Miller § 3914.2, at 508-14 (2d ed. 1991). The October 1987 order refusing to vacate the writ of attachment is not res judicata with respect to Jenson's constitutional claims.
 
 B. The July 1989 Deficiency Judgment
 
 13
 The FDIC argues that the final judgment in the deficiency action, entered by the bankruptcy court on July 5, 1989, is res judicata with respect to all issues that were or could have been raised regarding the writ of attachment. We agree. The bankruptcy court designated its July 1989 order as a final judgment and entered it accordingly on the docket sheet. The order resolved the discrete set of issues pertaining to the FDIC's deficiency action and thus constituted a final, appealable order under our bankruptcy jurisprudence. See, e.g., In re Allen, 896 F.2d 416, 418-19 (9th Cir.1990); In re Mason, 709 F.2d 1313, 1315-18 (9th Cir.1983). Jenson attempted to raise his constitutional claims regarding the writ of attachment in an appeal from the July 1989 judgment, but the appeal was dismissed as untimely.
 
 
 14
 Jenson contends that the July 1989 judgment cannot be res judicata with respect to his constitutional claims because the bankruptcy court considered only whether a deficiency existed under state law and did not dismiss Jenson's adversary complaint challenging the writ of attachment. Jenson insists that the bankruptcy court did not determine the constitutional issues because it expressly reserved all " 'issues other than those referred to herein.' " He maintains that his challenge to the writ of attachment was thereby reserved and was not finally determined until the bankruptcy court entered its order of April 2, 1990.
 
 
 15
 Jenson's argument mischaracterizes the bankruptcy court's July 1989 order and judgment. The bankruptcy court's conclusions of law included a reservation of issues not determined in the deficiency action trial. Conclusion of Law No. 3 stated:Issues other than those referred to herein have not been determined and to the extent any such issues may exist, those issues are reserved and shall be pursued by the filing of an appropriate administrative claim within 60 days from May 19, 1989, and such claim and all litigation with respect thereto shall be diligently prosecuted.
 
 
 16
 Bankruptcy Court's Findings of Fact and Conclusions of Law at 4 (Case No. BK-LV-S-88-2309-RCJ). Jenson's argument that the July 1989 reservation of issues operated to preserve his constitutional claims is not persuasive. Conclusion 3 specifically provided that all reserved issues "shall be pursued by the filing of an appropriate administrative claim" with the FDIC within 60 days. The record indicates that Jenson failed to comply with this requirement. Thus, if the constitutional claims were among the issues reserved by the July 5 judgment, Conclusion 3 makes clear that they are no longer part of this litigation.
 
 
 17
 The FDIC maintains that the reserved issues did not include any claim challenging the writ of attachment. We find this interpretation more plausible. FDIC administrative proceedings are designed for the resolution of claims against failed financial institutions, such as Jenson's fraud and breach of contract claims against Alliance. See 12 U.S.C. § 1821(d)(5)-(7). Jenson's attack on the writ of attachment challenges action taken by the FSLIC after it became receiver for Alliance, and thus it is not a claim against a depository institution within the scope of the FDIC's administrative review. See 12 U.S.C. § 1821(d)(6)(A)(i).
 
 
 18
 The bankruptcy court's July 1989 judgment in the deficiency action was a final, appealable order. The district court's earlier order refusing to vacate the writ of attachment merged into this final judgment and was subject to review on an appeal from that judgment. Balla v. Idaho State Bd. of Corrections, 869 F.2d 461, 468 (9th Cir.1989). Jenson has thus had a full and fair opportunity to litigate the attachment issue, and he is precluded from taking another bite at the apple in the instant appeal.
 
 III. BANKRUPTCY ISSUES
 
 19
 Jenson contends that the bankruptcy court erred in refusing to avoid the FDIC's attachment as a preferential transfer, in allowing the attachment lien as a secured claim and permitting post-petition perfection, in allowing post-petition interest as part of the FDIC's secured claim, and in refusing to surcharge the FDIC for interim attorney fees incurred by Jenson as debtor-in-possession.
 
 A. Allowance as a Secured Claim
 
 20
 The bankruptcy court held that the FDIC's writ of attachment was not dissolved by the filing of Jenson's bankruptcy petition and that it properly was treated as a perfected lien and allowed as a secured claim. Jenson argues that the bankruptcy court erred in allowing a prejudgment attachment lien as a secured claim. He contends that a writ of attachment, unperfected by judgment before the filing of a bankruptcy petition, is insufficient to give the attaching creditor secured status.
 
 
 21
 Jenson's argument is foreclosed by In re Wind Power Systems, Inc., 841 F.2d 288 (9th Cir.1988). In that case, the holder of a prejudgment writ of attachment granted before the start of the 90-day preference period levied on the debtor's property within 90 days of the filing of the debtor's Chapter 11 petition. The debtor attempted to avoid the lien as a preferential transfer under 11 U.S.C. § 547. We held that because under California law the creation and priority of an attachment lien relate back to the date on which the writ was issued, the lien arose outside the 90-day preference period and was thus not avoidable as a preference. Id. at 291-92. We also indicated that we would permit the attachment creditor to proceed to judgment in the underlying action and held that if the creditor prevailed, its perfection of the lien by judgment would relate back to the issuance of the writ of attachment and thereby would be immune from the trustee's avoiding powers under the "strong-arm" clause of 11 U.S.C. § 544. Id. at 293.
 
 
 22
 Nevada law, like California law, provides for relation back of perfection of a prejudgment attachment lien. See Petri v. Sheriff of Washoe County, 87 Nev. 549, 491 P.2d 43 (Nev.1971). Thus, Wind Power controls. The district court properly allowed the FDIC's attachment lien as a secured claim.
 
 B. The Preference Claim
 
 23
 Section 547(b) of the Bankruptcy Code permits the trustee (or debtor-in-possession) to avoid certain pre-petition transfers of estate property that favor one creditor over others. Subject to certain exceptions, a "preference" is any transfer of an interest of the debtor in property (1) to or for the benefit of a creditor (2) for or on account of an antecedent debt (3) made within 90 days before the date of the filing of the bankruptcy petition (4) which allows the creditor to receive more than it would in a Chapter 7 liquidation. See 11 U.S.C. § 547(b), (f).
 
 
 24
 Jenson contends that bankruptcy court erred in ruling that the FDIC's unperfected attachment lien was not a voidable preference. The district court held that the transfer created by the writ of attachment related back to the date of issuance, July 2, 1987, which was outside the 90-day preference period. We find no error in the district court's ruling.
 
 
 25
 In Wind Power we held that "[f]or purposes of section 547, the time of transfer relates back as allowed by state law." 841 F.2d at 291 (citing Bass v. Stodd, 357 F.2d 458, 463 (9th Cir.1966)). Nevada statutory law provides that a transfer of real property is made "when the asset is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." NRS § 112.200. Once Jenson's property was attached, no subsequent bona fide purchaser could acquire a superior interest in the property. As discussed above, when the FDIC's attachment lien was perfected by judgment its perfection related back to July 2, 1987. See Wind Power, 841 F.2d at 293.
 
 C. Post-petition Interest
 
 26
 The bankruptcy court held that the FDIC's secured claim included post-petition interest earned on the funds held by the U.S. Marshall pursuant to the prejudgment writ of attachment. The court held that the interest represented post-petition appreciation of the collateral and not post-petition interest on the FDIC's claim. The district court agreed, and so do we.
 
 
 27
 Jenson argues that under 11 U.S.C. § 502(b)(2) the FDIC's security interest does not extend to post-petition interest that accrues on attached funds. He cites United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1987), for the general proposition that federal bankruptcy law bars post-petition interest on undersecured claims.
 
 
 28
 In Timbers, the Supreme Court held that undersecured creditors are not entitled to compensation under 11 U.S.C. § 362(d) for the delay caused by the automatic stay in foreclosing on their collateral. Id. at 382, 108 S.Ct. at 636. Timbers is inapposite because, unlike the present case, it did not involve the value of the collateral itself. The post-petition interest at issue in Jenson's case is analogous to the appreciation of a tangible asset during the time between the filing of a bankruptcy petition and liquidation of the collateral. Although the Timbers Court stated that section 506(b) does not give an undersecured creditor "interest on the value of its collateral," id. at 373, 108 S.Ct. at 631, that statement must be understood in the factual context of the Timbers case, which concerned the value to the creditor of being able to foreclose immediately. The Court explicitly distinguished the question of a change in the value of the collateral itself. See id. at 370, 108 S.Ct. at 630. American bankruptcy law has long recognized the distinction between interest on a claim and appreciation of the collateral and has not applied the "no post-petition interest" rule to the return on interest-bearing collateral. See 3 L. King, Collier on Bankruptcy p 502.02, at 502-36 (15th ed. 1991) (citing Sexton v. Dreyfus, 219 U.S. 339, 346, 31 S.Ct. 256, 258, 55 L.Ed. 244 (1911)). The bankruptcy court did not err.
 
 D. Attorney Fees
 
 29
 The bankruptcy court allowed Jenson's application for interim attorney fees in the amount of $27,525, but it refused to surcharge the FDIC for those fees pursuant to 11 U.S.C. § 506(c). Section 506(c) provides:
 
 
 30
 The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.
 
 
 31
 11 U.S.C. § 506(c). Section 506(c) typically comes into play where the trustee stores or maintains the collateral pending liquidation or where a creditor's loan is secured by the debtor's inventory or equipment and the debtor-in-possession continues to operate its business during Chapter 11 proceedings. See, e.g., In re Flagstaff Foodservice Corp., 739 F.2d 73 (2d Cir.1984). See generally 3 Collier on Bankruptcy p 506.06, at 506-56 to 506-59.
 
 
 32
 In affirming the bankruptcy court, the district court relied on In re Cascade Hydraulics & Utility Service, Inc., 815 F.2d 546 (9th Cir.1987). Cascade interpreted section 506(c) narrowly to require that the trustee or debtor-in-possession "establish in quantifiable terms that it expended funds directly to protect or preserve the collateral." Cascade, 815 F.2d at 548. Recovery is limited "to the extent that the secured creditor benefited from the services." Id. (emphasis added). Section 506(c) was not intended as a substitute for recovery of normal administrative expenses from the debtor's estate. See In re Proto-Specialties, Inc., 43 B.R. 81, 83 (Bankr.D.Ariz.1984) (citing Brookfield Prod. Credit Ass'n v. Borron, 738 F.2d 951, 953 (8th Cir.1984)).
 
 
 33
 Jenson argues that the bankruptcy court erred and that Cascade has no application because it involved a security interest that was perfected pre-petition and not contested by the debtor-in-possession. Jenson fails to specify, however, how his actions benefited the FDIC in any way. This failure is critical because the party seeking recovery under section 506(c) bears the burden of proof. Flagstaff, 739 F.2d at 77; 3 Collier on Bankruptcy p 506.06, at 506-63. Moreover, there is little Jenson could have done to protect or preserve the collateral, since the attached funds already were sitting in a bank account controlled by the U.S. Marshall. The bankruptcy court's finding that Jenson's legal maneuvers did not benefit the FDIC was not clearly erroneous.
 
 IV. CONCLUSION
 
 34
 Jenson's constitutional challenge to the ex parte writ of attachment is barred by res judicata. We find no error in the district court's disposition of the other bankruptcy issues raised by Jenson.
 
 
 35
 AFFIRMED.
 
 
 36
 BEEZER, Circuit Judge, concurring in the judgment:
 
 
 37
 The FDIC's predecessor-in-interest sued Jenson for a deficiency judgment. The district court issued a writ of attachment in the deficiency action that attached Jenson's one-third interest in a deed of trust and related promissory note. Pursuant to the writ of attachment, Jenson's share of note payments were garnisheed and paid to the U.S. Marshal. By February 3, 1988, the note had been paid in full, and the U.S. Marshal possessed $554,225.86 in note payments. On July 1, 1988, Jenson filed a Chapter 11 bankruptcy petition. In these circumstances, I do not rely upon In re Wind Power Systems, Inc., 841 F.2d 288 (9th Cir.1988), to conclude that the FDIC's attachment lien is not a voidable preference and that the district court properly allowed the FDIC's attachment lien as a secured claim against Jenson's bankruptcy estate.
 
 
 38
 For purposes of the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, " 'when [a transfer] is complete' is a matter of federal law." Barnhill v. Johnson, --- U.S. ----, ----, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) (quoting McKenzie v. Irving Trust Co., 323 U.S. 365, 369-70, 65 S.Ct. 405, 407-08, 89 L.Ed. 305 (1945)). Section 547(e)(2) provides, with an exception not relevant in this case, that a transfer is made
 
 
 39
 (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time; [or]
 
 
 40
 (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days....
 
 
 41
 For purposes of Section 547, "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(B). The Bankruptcy Code does not specify the steps necessary to perfect the FDIC's interest in Jenson's share of the note payments, so Nevada law, the relevant state law, governs. Barnhill, --- U.S. at ----, 112 S.Ct. at 1389; In re Gulino, 779 F.2d 546, 550 (9th Cir.1985).
 
 
 42
 Under Nevada law, the FDIC's attachment lien arose when the U.S. Marshal took possession of the note payments. Nevada Revised Statutes 31.060(4); Beemer v. Seaborn, 54 Nev. 459, 22 P.2d 356, 357 (1933). While the U.S. Marshal retained possession, the attachment lien prevented other creditors from obtaining any interest in those funds that was superior to the FDIC's interest. Beemer, 22 P.2d at 357. Thus, for purposes of Section 547, the FDIC's attachment lien was perfected by February 3, 1988, and the transfer was complete by that date. Because this transfer occurred more than 90 days before Jenson filed for bankruptcy on July 1, 1988, the FDIC's attachment lien is not a preferential transfer. 11 U.S.C. § 547(b)(4).
 
 
 43
 The U.S. Marshal retained possession of the note payments as of the date of Jenson's bankruptcy filing. Because this possession perfected the FDIC's attachment lien by preventing another creditor from obtaining a judicial lien on those funds, the lien was not avoidable under 11 U.S.C. § 544(a)(1). The district court properly allowed the FDIC's attachment lien as a secured claim against Jenson's bankruptcy estate.
 
 
 
 [1]
 Jenson and Speaks each gave Alliance a promissory note in the amount of $1.6 million, and each personally guaranteed the other's note. The two notes were secured by a first deed of trust on the never-opened DeVille Casino in Las Vegas. The casino was sold for $1.5 million at the foreclosure sale, leaving a deficiency of approximately $1.7 million
 
 
 [2]
 The fact that a judgment is unappealed ordinarily does not deprive it of preclusive effect. Moitie, 452 U.S. at 398, 101 S.Ct. at 2427. However, the fact that a party was unable to appeal from the prior decision militates against giving the decision preclusive effect. See Luben Indus., Inc. v. United States, 707 F.2d 1037, 1040 (9th Cir.1983); see also Block v. International Trade Comm'n, 777 F.2d 1568, 1571-72 (Fed.Cir.1985)